**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

IN RE GRAND JURY SUBPOENA NO. 2026R00350-01

Case No. 26-MI-_____

## MOTION OF THE FULTON COUNTY BOARD OF REGISTRATION AND ELECTIONS TO QUASH GRAND JURY SUBPOENA

This is a motion to quash a grand jury subpoena arising out of the U.S. Department of Justice's (DOJ) latest effort to target and harass the President's perceived political enemies—this time election officials, poll workers, and volunteers in Fulton County whom Donald Trump continues to disparage as he perpetuates his false claim that they "stole" the 2020 election.

On April 17, 2026, a federal prosecutor in the U.S. Attorney's Office for the Middle District of North Carolina—working at the direction of U.S. Attorney Dan Bishop[1]—issued an unprecedented and harassing grand jury subpoena to the Fulton County Board of Registration and Elections (FBRE) seeking the disclosure of sensitive personal information of <u>thousands</u> of Fulton County election workers and volunteers who served in the 2020 general election in Fulton County. *See* Exhibit A,

---

[1] *See, e.g.*, Kaelan Deese, *Bondi taps US attorney who voted against Biden 2020 certification for election integrity role,* Washington Examiner (Mar. 31, 2026), https://www.washingtonexaminer.com/news/justice/4511150/bondi-taps-us-attorney-who-voted-against-biden-2020-certification-for-election-integrity-role/.

Subpoena No. 2026R00350-01 (the "Subpoena"). Although the Subpoena purports to be issued by a grand jury sitting in the Northern District of Georgia, it directs the FBRE to send the personal information of thousands of volunteers and county employees to the email accounts of an out-of-district AUSA and an FBI agent.

As explained below, there are many reasons that this Court should quash the Subpoena. Its purpose is to target, harass, and punish the President's perceived political opponents; it is grossly overbroad and untethered to any reasonable need; it cannot yield any evidence that could result in a criminal prosecution (because, among other things, the statutes of limitations have expired for any purported 2020 election crimes); it burdens the First Amendment rights of election workers and will chill their participation in elections; and it unreasonably interferes with Georgia's sovereign authority to administer elections. By any measure, the Subpoena is improper and must be quashed.

**A. The Court Has the Power and Duty to Quash the Grand Jury Subpoena.**

"Although the grand jury operates with great independence, 'the powers of the grand jury are not unlimited and are subject to the supervision of a judge.'" *In re Grand Jury, John Doe No. G.J.2005-2*, 478 F.3d 581, 584–85 (4th Cir. 2007) (hereinafter, "*John Doe*") (quoting *Branzburg v. Hayes*, 408 U.S. 665, 688 (1972)). That supervisory authority exists, in part, because "[g]rand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation

2

out of malice or an intent to harass." *United States v. R. Enters., Inc.*, 498 U.S. 292, 299 (1991); *see also Trump v. Vance*, 591 U.S. 786, 805 (2020). As the former Fifth Circuit noted, "[w]hen the grand jury goes on a fishing expedition in forbidden waters, the courts are not powerless to act." *Ealy v. Littlejohn*, 569 F.2d 219, 227 (5th Cir. 1978). The judiciary's supervisory role "is especially important because of the risks for abuse that inhere in proceedings over which trial and appellate courts rarely have insight." *United States v. Calk*, 87 F.4th 164, 186 (2d Cir. 2023).

Notably, courts have the power to quash a subpoena when "compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2); *R. Enters.*, 498 U.S. at 299 (citation omitted). A subpoena may be "unreasonable or oppressive" if it is "irrelevant, abusive or harassing, overly vague, or excessively broad." *John Doe*, 478 F.3d at 585 (internal citations omitted).[2] While the subpoena power formally belongs to the grand jury, "in modern federal practice, prosecutors often issue grand jury subpoenas with little or no involvement of the grand jurors themselves." *In re Grand Jury Subpoenas to Off. of N.Y. State Att'y Gen.*, 814 F. Supp. 3d 284, 298–99 (N.D.N.Y. 2026). "Rule 17 therefore functions as a key mechanism to ensure that the grand jury is not 'misused' by the Department of Justice." *Id.* at 299 (citation

---

[2] "The factors the district court must consider under Rule 17(c)(2) . . . cannot sensibly be converted into a mechanical rule enabling an escape from case-by-case judgment." *United States v. Bergeson*, 425 F.3d 1221, 1225 (9th Cir. 2005). Put differently, "what is reasonable depends on the context." *R. Enters.*, 498 U.S. at 299.

omitted); *see also Calk*, 87 F.4th at 186 ("[C]ourts may not ignore possible abuse of the grand jury process, as the grand jury is not meant to be the private tool of a prosecutor.") (internal quotation marks and citation omitted).

In recent months, abuses by the U.S. Department of Justice have compelled multiple courts to quash grand jury subpoenas issued for improper political purposes. *See, e.g.*, *In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, 2026 WL 710202, at *5–10 (D.D.C. Mar. 13, 2026) (hereinafter, "*In re Federal Reserve Grand Jury Subpoena*") (granting motion to quash subpoena issued to the Chairman of the Federal Reserve Jerome Powell because it was motivated by the President's political agenda of lowering interest rates); *In re Grand Jury Subpoenas to Off. of New York State Att'y Gen.*, 814 F. Supp. 3d at 299–300 (granting motion to quash subpoena issued to the office of New York's Attorney General, where federal prosecutor acted outside scope of his appointment and subpoena was issued to a state law-enforcement office that the President has publicly cast as a political adversary).[3]

Ten federal courts of appeals, including the Eleventh Circuit, have weighed in on the question, and they have uniformly held that a court can quash a subpoena on the basis that it was issued for an "improper" purpose. *In re Federal Reserve*

---

[3] Because the FBRE has not yet had an opportunity to inspect the documents purporting to vest an out-of-district U.S. Attorney with the authority to direct the issuance of grand jury subpoenas in the Northern District of Georgia, the FBRE expressly reserves any argument or objection relating to the authority to do so.

*Grand Jury Subpoena*, 2026 WL 710202, at \*5 (collecting cases); *see also United States v. US Infrastructure*, 576 F.3d 1195, 1214 (11th Cir. 2009) (grand jury cannot be used "solely or even primarily" for an improper purpose). The sheer fact that there is some conceivable proper purpose is not dispositive; a subpoena must be quashed if its "'sole or dominant' purpose is improper." *See In re Federal Reserve Grand Jury Subpoena*, 2026 WL 710202, at \*5 (citations omitted).

**B. The Subpoena Purports to Require the FBRE to Produce Reams of Personal Identifying Information to the DOJ, Rather than a Grand Jury.**

On April 20, 2026, an FBI agent served the Subpoena on the Fulton County Director of Elections. The Subpoena directs the FBRE to provide "any/all records/documentation" that show the "name, position/function, residential and email addresses, and personal telephone number(s)" for ten categories of Fulton County 2020 election workers. There are thousands of such individuals, ranging from county employees who assisted on election day, to bus drivers who operated a mobile voting location, to volunteers and temporary poll workers. Ex. A, at 3. Specifically, the Subpoena seeks:

1. Rosters of Election Staff Members who served in the November 2020 General Election, sufficient to identify name, position/function, residential and email addresses, and personal telephone number(s), including for the following persons, without limitation:
   a. Individuals assigned to review Mail-In Ballots
   b. Individuals assigned to the Voter Review Panel/Board
   c. Individuals assigned to Mobile Voting Locations
   d. Individuals assigned to transfer results to or from media or to transport ballots, ballot stock, or media

e. Individuals employed or contracted by the Fulton County Board of Registration and Elections

f. Individuals who worked or volunteered on Election Day who were assigned to review or tabulate ballots

g. Individuals who worked or volunteered for the Risk Limiting Audit

h. Individuals who worked or volunteered for the Recount

i. Individuals who served as precinct managers and assistant managers

Notably, the Subpoena does not require that the FBRE provide the records to the grand jury; instead, it directs that the records be routed out of this district to a U.S. Attorney appointed to "pursue election-related probes across the country"[4] on behalf of DOJ. So by its terms, the Subpoena does not suggest that the grand jury is conducting an investigation of its own (for which it intends to receive the records), but rather, that DOJ is simply conducting its own investigation.[5] Notably, "[f]ederal prosecutors have no authority to issue grand jury subpoenas independent of the grand jury." *Lopez v. Dep't of Just.*, 393 F.3d 1345, 1349 (D.C. Cir. 2005).[6] Yet here, there

---

[4] Vera Bergengruen *et al.*, *The Unlikely Ensemble Leading Trump's Hunt for 2020 Election Fraud*, Wall Street Journal (Mar. 30, 2026), https://www.wsj.com/politics/the-unlikely-ensemble-leading-trumps-hunt-for-2020-election-fraud-6f69ae66.

[5] *See* Ex. A at 3 ("Send the subpoenaed records, a copy of the subpoena, and any request for reimbursement to the AUSA identified on the subpoena or its attachment(s) and/or to Special Agent Hugh Evans at ███████@fbi.gov and Assistant United States Attorney at ███████@usdoj.gov.").

[6] While some courts have held that "[g]overnment attorneys engaged in grand jury investigations properly may have subpoenas issued without the grand jury's authorization or awareness to compel attendance of witnesses before the grand jury," those courts have also noted that prosecutors "may not use the grand jury subpoena power to gather information without the intended participation of the grand jury." *United States v. Santucci*, 674 F.2d 624, 627 (7th Cir. 1982) (emphasis added); *In re Melvin*, 546 F.2d 1, 5 (1st Cir. 1976) ("The United States Attorney may obtain

is no indication from the face of the Subpoena that the grand jury is even aware of this investigation, that the records will be returned to the grand jury, or that the grand jury would knowingly participate in a politicized abuse of its subpoena process given, among other things, that the statute of limitations has lapsed on any purported 2020 election "crime."

## C. The President's Public Comments, Including Social Media Posts, Confirm that the Subpoena Is Designed to Punish, Intimidate, and Harass His Perceived Political Opponents.

For the past five and a half years, the President has obsessively propagated the debunked conspiracy theory that Fulton County "stole" the 2020 election from him.[7] And he has made it clear that he seeks retribution against those who refuse to

---

subpoenas issued in blank by the court, fill in the blanks, and have the witnesses served without consulting the grand jury. Still, he may not use his subpoena powers under Rule 17 to gather evidence without the participation of the grand jury.") (citations omitted and emphasis added); *Durbin v. United States*, 221 F.2d 520, 522 (D.C. Cir. 1954) ("The Constitution of the United States, the statutes, the traditions of our law, the deep rooted preferences of our people speak clearly. . . . They do not recognize the United States Attorney's office as a proper substitute for the grand jury room and they do not recognize the use of a grand jury subpoena, a process of the District Court, as a compulsory administrative process of the United States Attorney's office.") (internal quotation marks and citation omitted).

[7] Notably, multiple investigations and lawsuits have confirmed that there is no reasonable basis for the theory that the 2020 election was "stolen." *See, e.g.*, House Report 117-663, Final Report of the Select Committee to Investigate the January 6th Attack on the United States Capitol (Dec. 22, 2022), available at https://www.congress.gov/committee-report/117th-congress/house-report/663/1, §§ 1.6 (detailing multiple witness accounts of the President being told that there was no substantial fraud in the 2020 election), 1.7 (collecting court cases rejecting claims of fraud in the 2020 election).

indulge his baseless claims. The most disturbing manifestation of the President's

retaliation is his targeting of Fulton County poll workers, including individuals like

Ruby Freeman, who were falsely vilified by the President and his political allies over

false allegations that they cheated him out of a 2020 win. Here is just a sample of

the President's social media posts, which leave no question that the Subpoena's

purpose is to intimidate and harass poll workers, including innocent people like Ms.

Freeman:

- October 23, 2023: Reposting an image of two black women with papers and masks, including the following text, "START ARRESTING THE POLL WORKERS AND WATCH HOW FAST THEY TELL YOU WHO TOLD THEM TO CHEAT."[8]

- August 14, 2023: "THOSE WHO RIGGED & STOLE THE ELECTION WERE THE ONES DOING THE TAMPERING, & THEY ARE THE SLIME THAT SHOULD BE PROSECUTED."[9]

- August 17, 2023: Posting a link to an article titled, "How Should The GOP Respond to Fulton County? Indict the Left."[10] The article concludes: "'Investigate first, define the crimes later' should be the

---

[8] Donald J. Trump (@realDonaldTrump), Truth Social (Oct. 23, 2023, at 2:57 p.m.), https://truthsocial.com/@realDonaldTrump/posts/111285859945538575 (reposted from Ash Coleman, @AshColeman) (also available at https://trumpstruth.org/statuses/9173).

[9] Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 14, 2023, at 8:23 a.m.), https://truthsocial.com/@realDonaldTrump/posts/110887946861072507.

[10] Donald J. Trump (@realDonaldTrump), Truth Social (Aug. 17, 2023, at 4:21 p.m.), https://truthsocial.com/@realDonaldTrump/posts/110906813000476495.

order of the day. And for even the most minor of offenses, the rule should be: no charity, no goodwill, no mercy."[11]

And the relentless campaign to harass and intimidate election workers only escalated after Donald Trump was elected for a second term:

- November 1, 2025: Reposting a video with the caption: "MR. PRESIDENT, BY THE WAY, YOU WON GEORGIA THREE TIMES."[12]

- November 26, 2025: "THE 2020 ELECTION WAS RIGGED AND STOLEN."[13]

- December 23, 2025: Reposting, "BREAKING: Ruby Freeman should have to pay Rudy back reparations and every single penny that she got off of him based on a BIG LIE AND A FALSE PRETENSE. And her, Raffensperger, Kemp and every single one of their fellow election riggers must be arrested and prosecuted to the fullest extent of the law. This was the POLITICAL CRIME OF THE CENTURY and they should never be allowed to show their faces in public again without being shouted down by we the people for stealing our vote and our President from us . . . When President Trump was talking about the enemy from within, he was talking about people like them." Commenting with repost, "Thank you Joshua. Total Crooks!!!"[14]

- December 25, 2025: Reposting, "Fulton County certified a contested election, and it took them only 5 yrs to admit it[.] They . . . started

---

[11] Charlie Kirk, *How Should The GOP Respond to Fulton County? Indict the Left*, The Federalist (Aug. 15, 2023), https://thefederalist.com/2023/08/15/how-should-republicans-respond-to-fulton-county-indict-the-left/ (emphasis added).

[12] Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 1, 2025, at 10:36 a.m.), https://truthsocial.com/@realDonaldTrump/posts/115474943152358383 (reposted from Real America's Voice (RAV), @RealAmVoice).

[13] Donald J. Trump (@realDonaldTrump), Truth Social (Nov. 26, 2025, at 2:31 p.m.), https://truthsocial.com/@realDonaldTrump/posts/115617658912008194.

[14] Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 23, 2025, at 6:15 p.m.), https://truthsocial.com/@realDonaldTrump/posts/115771425061663851 (reposted from Joshua Hall, @JoshHall2024).

9

pulling suitcases out from under tables and started stuffing ballots into machines . . . Trump won Georgia, by a lot … and everyone knows it."[15]

- December 25, 2025: Reposting, "Ruby Freeman needs to be held accountable! She was caught on camera putting the same ballots through the machine several times in Fulton County! Time to payback @RudyGuiliani He Was Right!"[16]

- January 29, 2026: Reposting, "President Trump's legal team exposing the 2020 Election Fraud at the Georgia State Farm Arena pulling suitcases full of alleged fraudulent ballots from under tables . . . stealing the election from President Trump. This is exactly why the FBI raided the election center today in Fulton County, Atlanta, Georgia. This is only the beginning. Prosecutions are coming."[17]

To be clear, the President's tactics to punish and harass his perceived enemies have caused immense harm. For example, President Trump and his followers repeatedly (and falsely) accused Ms. Freeman of tampering with the results of the 2020 election. On May 31, 2022, Ms. Freeman gave an interview with the House Select Committee to Investigate the January 6th Attack on the United States

---

[15] Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 25, 2025, at 12:42 a.m.), https://truthsocial.com/@realDonaldTrump/posts/115778605564637366 (reposted from Chicago1Ray, @Chicago1Ray).

[16] Donald J. Trump (@realDonaldTrump), Truth Social (Dec. 25, 2025, at 1:03 a.m.), https://truthsocial.com/@realDonaldTrump/posts/115778691872777547 (reposted from JamierR Army Girl, @Jamierodr14).

[17] Donald J. Trump (@realDonaldTrump), Truth Social (Jan. 29, 2026, at 6:01 a.m.), https://truthsocial.com/@realDonaldTrump/posts/115978045822911393 (reposted from The SCIF, @TheSCIF).

Capitol.[18] She explained in compelling detail how the personal attacks from the President and his aides have detrimentally changed every aspect of her life, her home, her family, her work, her sense of safety, and her mental health.  In pertinent part, she stated:

- "I've lost my name. I've lost my reputation. I've lost my sense of security – all because a group of people, starting with Number 45 [President Trump] and his ally Rudy Giuliani, decided to scapegoat me and my daughter, Shaye, to push their own lies about how the Presidential election was stolen."[19]

- "What is true is that I signed up as an election worker because I believe in our democracy. I signed up to support my daughter, Shaye, whose entire professional career has been devoted to making sure that Fulton County Elections are fair and that every vote is counted."[20]

- "But because some people didn't like the outcome of the fair and accurate election in Fulton County, they decided to attack Shaye and me by name and by picture. I received hundreds of racist, threatening, horrible calls and messages that I do not even feel comfortable describing here."[21]

- "Do you know how it feels to have the President of the United States . . . target you? . . . [H]e targeted me . . . a small-business owner, a mother, a proud American citizen who stood up to help Fulton County run an election in the middle of the pandemic."[22]

---

[18] Interview of Ruby Freeman Before the House Select Committee to Investigate the January 6th Attack on the United States Capitol (May 31, 2022), available at https://www.govinfo.gov/content/pkg/GPO-J6-TRANSCRIPT-CTRL0000086315/pdf/GPO-J6-TRANSCRIPT-CTRL0000086315.pdf.

[19] *Id.* at 6:21–24.

[20] *Id.* at 7:6–9.

[21] *Id.* at 7:22–25.

[22] *Id.* at 8:8–13.

- "I am just one name, one reputation, one life devastated by disinformation, but here are so many more, and there will be more if things don't change." [23]

None of this deterred the President. As shown in the above-quoted social media posts, he and his followers continue to circulate the same harmful lies about Ms. Freeman and other election workers.

The Subpoena is a chilling escalation in the campaign to terrorize Fulton County election workers, but harassment and political retribution are in no way permissible purposes for a grand jury subpoena. The Court should quash the Subpoena to protect thousands of election workers from potentially devastating consequences.

### D. The Fact That the Statute of Limitations Has Run on Any Conceivable 2020 Election Crime Confirms that the Subpoena Is Improper.

The Subpoena should be quashed for the additional reason that known facts foreclose any conceivably proper purpose. The purpose of any grand jury proceeding is "to determine whether a crime has been committed and whether criminal proceedings should be instituted . . . ." *United States v. Calandra*, 414 U.S. 338, 343–44 (1974); *see also United States v. (Under Seal)*, 714 F.2d 347, 349 (4th Cir. 1983) ("[P]ractices which do not aid the grand jury in its quest for information bearing on the decision to indict are forbidden. This includes use of the grand jury by the prosecutor to harass witnesses or as a means of civil or criminal discovery.")

---

[23] *Id.* at 9:4–6.

(footnotes omitted). But here, the statute of limitations for any federal crime that could conceivably have occurred in relation to the 2020 election has already passed. *See, e.g.*, 52 U.S.C. § 20511 (willful effort to interfere with fair and impartial election process, subject to five-year statute of limitations); 52 U.S.C. § 20701 (willful failure to preserve election records, same). In particular, the general five-year statute of limitations for noncapital offenses, *see* 18 U.S.C. § 3282, would apply to offenses under Section 20511 or Section 20701, as well as all of the following: 18 U.S.C. § 371 (conspiracy to defraud the federal government); 18 U.S.C. §§ 594, 610 (voter intimidation); 18 U.S.C. § 1001 (false representations to federal government); 18 U.S.C. § 1512 (obstruction of official proceedings). That deadline has long since passed for any conduct related to the 2020 election.

Perhaps DOJ will argue that grand juries may properly request records outside of the statute of limitations in order "to determine whether there were illegal activities which were begun before the statutory period and continued within it." *Trump v. Vance*, 480 F. Supp. 3d 460, 496–97 (S.D.N.Y.), *aff'd*, 977 F.3d 198 (2d Cir. 2020) (internal quotation marks and citation omitted); *see also United States v. Doe*, 457 F.2d 895, 901 (2d Cir. 1972) ("[T]he grand jury's scope of inquiry is not limited to events which may themselves result in criminal prosecution, but is properly concerned with any evidence which may afford valuable leads for

investigation of suspected criminal activity during the limitations period.") (internal quotation marks and citations omitted).

In this case, however, there is no indication that DOJ is investigating <u>any</u> illegal activity that took place within the statute of limitations. Instead, the Subpoena seeks name and contact information only for people who worked on the Fulton County general election in 2020, five and a half years ago. *See generally* Ex. A. But grand juries do not exist to conduct roving inquiries untethered to a prosecutable criminal case.[24] Similarly, DOJ cannot rely on the mere possibility of a subsequent obstruction charge as the basis for the Subpoena. Because there is no reason to believe that the records sought by the Subpoena can support a prosecutable criminal case within any applicable statute of limitations, DOJ cannot identify any reasonable interest in such information.

### E. The Subpoena Is Overbroad.

The Subpoena should be quashed for the additional, independent reason that it is egregiously overbroad and oppressive. Without any effort to target by precinct,

---

[24] *Cf. Costello v. United States*, 350 U.S. 359, 362 (1956) ("There is every reason to believe that our constitutional grand jury was intended to operate substantially like its English progenitor. The basic purpose of the English grand jury was to provide a fair method for instituting criminal proceedings against persons believed to have committed crimes."); *In re Grand Jury Subpoenas, Apr., 1978, at Baltimore*, 581 F.2d 1103, 1108 (4th Cir. 1978) ("If the powers of the grand jury, including the power to subpoena documents, are used, not for the purpose of criminal investigation but rather to gather evidence for civil enforcement, there exists an abuse of the grand jury process.").

function, or suspected irregularity, the Subpoena demands the sensitive, personal information of thousands of individuals who participated in the administration of the 2020 election in *any* capacity. No legitimate investigative theory could justify that breadth or such an open-ended fishing expedition into the private and personally identifying information of so many individuals, with no regard for whether the information will conceivably support a criminal investigation.

Subpoenas so sweeping cannot "be regarded as reasonable." *Hale v. Henkel*, 201 U.S. 43, 76 (1906) ("[T]he *subpoena duces tecum* is far too sweeping in its terms to be regarded as reasonable. It does not require the production of a single contract, or of contracts with a particular corporation, or a limited number of documents, but all understandings, contracts, or correspondence[.]"), *overruled on other grounds by Murphy v. Waterfront Comm'n of N.Y. Harbor*, 378 U.S. 52 (1964); *In re Grand Jury Subpoena Duces Tecum Dated Nov. 15, 1993*, 846 F. Supp. 11, 13–14 (S.D.N.Y. 1994) ("[B]ecause the subpoena at issue unnecessarily demands documents that are irrelevant to the grand jury inquiry, it is unreasonably broad under Federal Rule of Criminal Procedure 17(c)."); *United States v. Vilar*, 2007 WL 1075041, at *46 (S.D.N.Y. Apr. 4, 2007) (excising certain document requests from subpoena because they are "too broad" and "beyond the scope of the investigation"); *see also In re Grand Jury Proceedings*, 593 F. Supp. 92, 94 (S.D. Fla. 1984) ("The Fourth Amendment provides protection against a grand jury subpoena *duces tecum*

too sweeping in terms 'to be regarded as reasonable'") (quoting *United States v. Dionisio*, 410 U.S. 1, 11–12 (1973)); *id.* at 95 (granting motion to quash subpoena on other grounds).

On its face, the Subpoena compels the production of personal information including for people who had nothing to do with ballot tabulation and could not possibly have impacted the 2020 election count or results. For example, the Subpoena seeks the names and personal information of bus drivers for mobile voting stations (subpoena request 1.c); "Risk Limiting Audit" participants who, by definition, do not certify whether a particular candidate won an election (subpoena request 1.g); and all "Election Staff Members," regardless of their specific job duties (subpoena request 1).[25] At best, DOJ's theory appears to be that it can subpoena the sensitive, personal information of thousands of people because, maybe, one of them was a witness to an undefined, un-prosecutable, time-barred "crime," for which there is zero credible evidence. But it is hard to imagine a clearer example of an

---

[25] Notably, many of the individuals who filled those roles volunteered, at substantial risk to themselves, to help Fulton County citizens vote while the COVID-19 pandemic was still raging through the county. *See* Claire Simms, *Inside the Vote: Being a poll worker in Georgia*, Fox5 Atlanta (Sept. 30, 2020), available at https://www.fox5atlanta.com/news/inside-the-vote-being-a-poll-worker-in-georgia ("Election officials say recruiting poll workers is always tough, but this year proved exceptionally difficult with the coronavirus pandemic.").

impermissible "fishing expedition." *See United States v. Nixon*, 418 U.S. 683, 700 (1974).

As reflected in Census data, Fulton County, Georgia is the state's most populous county, with an estimated 2020 population of approximately 1,066,710 residents. It covers a land area of about 526 square miles, and holds the highest population density in Georgia, with over 2,000 people per square mile.[26] To serve Georgia's most populous county, thousands of election workers, including volunteers and temporary employees, play a critical role in administering elections. No legal precedent authorizes a federal grand jury to compel the disclosure of such a broad swath of information based on the speculation about non-prosecutable crimes, let alone for the purpose of "investigating" debunked conspiracy theories that the President has obsessively posted and reposted on social media.

What is more, the timing of the Subpoena casts further doubt on its legitimacy. The FBRE and the Department of Elections are currently preparing for the 2026 elections. Given the President's express statements that he wants to "nationalize" elections and have Republican officials "take over" voting procedures in places like

---

[26] *See* United States Census Bureau, Data Profile of Fulton County, Georgia, https://data.census.gov/profile/Fulton_County,_Georgia?g=050XX00US13121#populations-and-people.

Fulton County,[27] it is impossible to ignore the possibility that this overbroad, time-consuming subpoena was issued for the additional purpose of interfering with Fulton County's ability to administer its own elections in 2026. Considering the breadth of the Subpoena, Fulton County's governmental duties, and DOJ's lack of any legitimate interest in conducting a time-barred investigation, the Court should quash the Subpoena and relieve the FBRE from the burden of compliance. *See Vilar*, 2007 WL 1075041, at *48 ("A subpoena [] may be quashed or modified" pursuant to Rule 17(c)(2) of the Federal Rules of Criminal Procedure "if compliance therewith would be overly burdensome.") (citing *In re Horowitz*, 482 F.2d 72, 77 (2d Cir. 1973)).

## F. The Grand Jury Subpoena Burdens the First Amendment Rights of Election Workers and Will Chill Participation in Elections.

The Subpoena's compelled disclosure of the identities and contact information of thousands of election workers—including private volunteers—burdens their First Amendment rights and will foreseeably chill their participation in local elections and their association with Fulton County. *See In re Grand Jury Proceeding,* 842 F.2d 1229, 1233 (11th Cir. 1988) ("[I]t is an essential prerequisite to the validity of an investigation which intrudes into the area of constitutionally protected rights of speech, press, association and petition that the State convincingly

---

[27] *See, e.g.*, Nick Corasaniti & Richard Fausset, *Trump Wants to 'Take Over' Elections. These States Are Prime Targets.*, N.Y. Times (Mar. 8, 2026), https://www.nytimes.com/2026/03/08/us/politics/trump-elections-fulton-county-ballots.html.

show a substantial relation between the information sought and a subject of overriding and compelling state interest.") (quoting *Gibson v. Fla. Legislative Investigation Comm.*, 372 U.S. 539, 546 (1963)); *see also NAACP v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 462–63 (1958) (compelled disclosure of associational identities of NAACP members constituted a restraint on freedom of association).[28]

Here, the Subpoena seeks to <u>compel the disclosure of election workers' identities and other personal information</u>—so long as they worked on the 2020 election in Fulton County—in a political environment in which election workers fear for their physical safety.[29] Notably, prior to this Administration, the U.S. Department of Justice created an "Election Threats Task Force," which was expressly designed "to address threats of violence against election workers, and to ensure that all election workers – whether elected, appointed, or volunteer – are able to do their

---

[28] Even a public employee's "right of free association [is] a right closely allied to freedom of speech and a right which, like free speech, lies at the foundation of a free society." *Shelton v. Tucker*, 364 U.S. 479, 486 (1960); *First Choice Women's Res. Centers, Inc. v. Davenport*, No. 24-781, 2026 WL 1153029, at *5 (U.S. Apr. 29, 2026) ("The First Amendment guarantees all Americans the rights to speak, worship, publish, assemble, and petition their government freely. Each of these rights, this Court has long understood, necessarily carries with it a corresponding right to associate with others.") (internal quotation marks and citations omitted).

[29] *See, e.g.*, U.S. Department of Justice Press Release, *Justice Department's Election Threats Task Force Secures Ninth Conviction* (Aug. 31, 2023), available at https://www.justice.gov/archives/opa/pr/justice-departments-election-threats-task-force-secures-ninth-conviction ("During and following the 2020 election cycle, the election community reported a sharp increase in hostile and threatening communications received from members of the public.").

19

jobs free from threats and intimidation." *See* FACT SHEET: Justice Department's Election Threats Task Force (August 31, 2023), available at https://www.justice.gov/archives/opa/file/1313366/dl?inline (identifying thirteen criminal prosecutions related to threats against election workers). Unfortunately, data suggests that these types of stresses, including the likelihood of being scapegoated by public officials, are driving election workers to leave the field in unprecedented numbers.[30]

Ultimately, the grand jury subpoena demands a dossier designed to out thousands of individuals, including their names, personal email addresses, personal phone numbers, and physical home addresses, all for people who, in the President's telling, "stole" the 2020 election from him. Such compelled disclosure will inevitably chill the associational rights of these individuals. It is well-established that

---

[30] Ruby Edlin & Lawrence Norden, *Analysis, Survey Finds Election Officials Remain Concerned About Safety, Lack of Government Support*, Brennan Center for Justice (Apr. 13, 2025), https://www.brennancenter.org/our-work/analysis-opinion/survey-finds-election-officials-remain-concerned-about-safety-lack ("Since at least 2020, scores of local election officials have been scapegoated by political leaders and others unhappy with election results, resulting in unprecedented attacks. Their concerns about safety remain high. In total, 32 percent of officials said they had been threatened, harassed, or abused, compared to 38 percent in 2025. Of the 14 percent who reported being threatened, 65 percent had been threatened in person, most commonly at their offices. Nearly 1 in 4 officials said they are concerned about being assaulted at home or at work. Fifty-two percent reported concern about the safety of their colleagues and staff. And more than half worried that threats, harassment, and intimidation would make it more difficult to retain or recruit election workers in the future.").

governmental efforts to compel the disclosure of identities can "chill association," even where the identifying information is not otherwise disclosed to the public at large. *See, e.g.*, *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 616 (2021). Accordingly, the Supreme Court has confirmed that such "compelled disclosure requirements are reviewed under exacting scrutiny," regardless of the nature of the association at issue. *Id.* at 608 (citing *NAACP*, 357 U.S. at 460–61)).[31] Put differently, the sheer fact that the U.S. Department of Justice promises not to disclose the list of Fulton County 2020 election workers is of no moment—the compelled disclosure in and of itself causes First Amendment harm all the same. *See, e.g.*, *First Choice Women's Res. Centers, Inc.*, 2026 WL 1153029, at \*12 ("Just ask yourself, would it have been an answer in *NAACP v. Alabama* if the State's Attorney General promised to keep the NAACP's membership rolls to himself?").

Here, the Subpoena cannot meet the high bar of exacting scrutiny, or any other level of scrutiny, given the absence of any legitimate need for the names and personal contact information of thousands of election workers, in a criminal investigation where no criminal charges can be brought. Even if there were a properly predicated, good faith, and regular criminal investigation, such an investigation does not require

---

[31] "'[I]t is immaterial' to the level of scrutiny 'whether the beliefs sought to be advanced by association pertain to political, economic, religious or cultural matters.' Regardless of the type of association, compelled disclosure requirements are reviewed under exacting scrutiny." *Bonta,* 594 U.S. at 608 (quoting *NAACP*, 357 U.S. at 460–61) (emphasis added).

disclosure of the names of <u>every individual</u> who worked on the election, nor a disclosure of each and every person's (1) phone number, (2) physical address, and (3) email address.

### G. The Grand Jury Subpoena Needlessly Intrudes on Georgia's Sovereign Role in Administering Elections.

The Subpoena, which seeks records related to the Fulton County 2020 General Election, also raises profound constitutional questions about the allocation of power between the federal government and the states. The Constitution's Electors Clause, Art. II, § 1, cl. 2, "authorize[s] States to conduct and regulate . . . Presidential elections." *Trump v. Anderson*, 601 U.S. 100, 112 (2024). Notably, Georgia has implemented this constitutional right to oversee elections through a comprehensive statutory scheme that vests custody and retention of election records in state and county officials. *See, e.g.*, O.C.G.A. §§ 21-2-70, 21-2-73, 21-2-500. Georgia has also enacted specific provisions governing investigation of fraud or any irregularities with respect to elections. *Id.* §§ 21-2-73, 21-2-390.

Here, DOJ, purporting to act in the name of the grand jury, seeks to infringe on county officials' authority by compelling them to provide records regarding a core state constitutional function. *Cf. Printz v. United States*, 521 U.S. 898, 919–20 (1997) ("[T]he Framers rejected the concept of a central government that would <u>act upon . . . the States</u>, and instead designed a system in which the State and Federal

22

Governments would exercise concurrent authority over the people.") (emphasis added).

As Judge Rosenbaum recently noted, 52 U.S.C. § 20701 and similar provisions authorizing the federal government to obtain certain election-related records "focus on civil-rights violations," not "purported voter fraud," and there is otherwise no statutory authority that gives "the President or DOJ power to intervene in Georgia's elections." *Georgia v. Clark*, 119 F.4th 1304, 1315 (11th Cir. 2024) (Rosenbaum, J., concurring). The Justice Manual recognizes this limitation:

> The Department [of Justice] has long recognized that the States – not the federal government – are responsible for administering elections, determining the validity of votes, and tabulating the results, with challenges handled by the appropriate election administrators, officials, legislatures, and courts. The Department [of Justice] has a limited role in these processes and should generally avoid interfering or appearing to interfere with election administration, tabulation, validation, or certification.

*Id.* (quoting U.S. Dep't of Just., Just. Manual § 9-85.300 (2022)). Here, the Subpoena infringes upon Petitioner's sovereign interests in conducting elections and reassuring poll workers that their private information will not be disseminated, misused, or used to harass. It is, by any measure, unreasonable and subject to quashal for this additional reason.

### H. A Grand Jury Subpoena Cannot Authorize the Indefinite Retention of the Personal Identifying Information of Thousands of Poll Workers.

To the extent that the Subpoena seeks to allow DOJ to indefinitely retain the sensitive data of nearly 3,000 election workers and volunteers, it should be quashed.

23

After all, "a subpoena is not a search warrant. With the exception of exemplars and other limited classes of physical evidence, a grand jury subpoena *duces tecum*— without more—cannot be used to simply seize a witness's property." *In re Grand Jury No. 09-1*, No. 6:10MC38ORL31DAB, 2010 WL 2330273, at *9 (M.D. Fla. June 10, 2010) (citations omitted). It is well settled that "[d]ocuments, records and tangible evidence remain the exclusive property of the person required to produce them before the grand jury and, absent a court order or stipulation between the witness and the government, the witness has the right to remove his evidence at the end of each day of the grand jury's proceedings and at the end of the grand jury's session." *Id.* (citing *Application of Mesta Machine Company*, 184 F.2d 375, 375–76 (3d Cir. 1950); *Application of Bendix Aviation Corp.*, 58 F. Supp. 953, 954 (S.D.N.Y. 1945)).

Here, the DOJ has not obtained any stipulation from the FBRE regarding the sensitive records at issue here; nor has DOJ sought any impounding order from the Court to retain the records. Yet the Subpoena still purports to require the FBRE to provide digital copies of the records directly to DOJ. *See* Subpoena at 3. In short, nothing authorizes the grand jury, let alone DOJ, to indefinitely retain those records without a stipulation or court order. *See, e.g.*, *In re Grand Jury No. 09-1*, 2010 WL 2330273, at *9–10 (citing U.S. Department of Justice, Antitrust Division, *Grand Jury Manual* and finding that DOJ "failed to demonstrate that it has a legitimate

24

reason to retain [the subpoenaed] property"). Given the sensitivity of the data at issue, and the lack of any legitimate reason for DOJ to indefinitely retain such data, the Court should quash the Subpoena, or in the alternative, decline to enter any order authorizing either DOJ or the grand jury to retain the requested sensitive data.

## I. Conclusion

For the foregoing reasons, this Court should quash the Subpoena.

Respectfully submitted, this 4th day of May, 2026.

[SIGNATURES ON FOLLOWING PAGE]

/s/ Y. Soo Jo
Y. Soo Jo
Georgia Bar No. 385817
OFFICE OF THE FULTON
COUNTY ATTORNEY
141 Pryor St. SW, Suite 4038
Atlanta, Georgia 30309
Tel.: (404) 612-0246
soo.jo@fultoncountyga.gov

/s/ Abbe David Lowell
Abbe David Lowell*
John Bolen*
LOWELL & ASSOCIATES, PLLC
1250 H Street NW
Washington, D.C. 20005
Tel.: (202)-964-6110
jbolen@lowellandassociates.com
alowellpublicoutreach@
lowellandassociates.com

/s/ Kamal Ghali
Kamal Ghali
Georgia Bar No. 805055
Matthew A. Josephson
Georgia Bar No. 367216
Michael C. Duffey
Georgia Bar No. 710738
CHAIKEN GHALI LLP
One Atlantic Center
1201 W. Peachtree St. NW, Suite 2300
Atlanta, Georgia 30309
Tel.: (404) 795-5005
kghali@chaikenghali.com
mjosephson@chaikenghali.com
mduffey@chaikenghali.com

/s/ Stephen Jonas
Stephen Jonas*
Norman Eisen*
DEMOCRACY DEFENDERS FUND
600 Pennsylvania Avenue SE, Suite 1580
Washington, D.C. 20003
Tel.: (202) 594-9958
steve@democracydefenders.org
norman@democracydefenders.org

*Counsel for Fulton County Board of Registration and Elections*

*Application for admission pro hac vice forthcoming*

26

## CERTIFICATE OF SERVICE

I hereby certify that on this day, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record.

This 4th day of May, 2026.

/s/ *Michael C. Duffey*
Michael C. Duffey