**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

IN RE GRAND JURY SUBPOENA NO. 2026R00350-01,

Case No. 1:26-mi-00088-WMR
(filing no. 1729)

**UNITED STATES OF AMERICA'S
RESPONSE TO PETITIONER'S MOTION TO QUASH AND
CROSS-MOTION TO ENFORCE GRAND JURY SUBPOENA**

INTRODUCTION

Fresh off its defeat in a Rule 41(g) motion to compel the return of ballots seized under a search warrant issued by a magistrate judge of this Court upon a finding of probable cause, Petitioner now seeks to obstruct the next step in the normal investigative process by moving to quash a grand jury subpoena limited to records identifying persons with relevant knowledge. Petitioner's speculative and politicized diatribe falls woefully short of the established standard and appears to be a dilatory tactic. The motion should be denied, and the government cross-moves for enforcement of the subpoena without further delay.

# Table of Contents

Table of Authorities ......................................................................................... iii

PROCEDURAL HISTORY ............................................................................. 1

FACTS ............................................................................................................. 2

ARGUMENT .................................................................................................... 3

I. THE SUBPOENA SEEKS RELEVANT DOCUMENTS ........................... 7

II. THE SUBPOENA IS NOT OVERBROAD. .............................................. 7

III. NO FIRST AMENDMENT INTERESTS ARE JEOPARDIZED
    BECAUSE, INTER ALIA, ELECTION WORKERS' IDENTITIES
    ARE PUBLIC RECORD. ......................................................................... 9

IV. PETITIONER HAS NOT SHOWN ANY IMPROPER PURPOSE,
    AND PRIOR PROBABLE CAUSE AND RULE 41(G)
    DETERMINATIONS SHOW THE OPPOSITE. ...................................... 12

    A. The President's Tweets Do Not Establish an Improper Purpose. ........ 13

    B. Rehashed Statute of Limitations and Sovereignty Arguments Do
       Not Establish Improper Purpose. ...................................................... 15

II. THE FORM AND ISSUANCE OF THE SUBPOENA WERE
    PROPER. ............................................................................................... 17

CONCLUSION ............................................................................................... 20

CERTIFICATE OF COMPLIANCE .............................................................. 21

# Table of Authorities

## Cases

*Americans for Prosperity Found. v. Bonta*, 594 U.S. 595 (2021) ..................... 10
*Biddinger v. Comm'r of Police of City of New York*, 245 U.S. 128 (1917) ....... 15
*Georgia v. Clark*, 119 F.4th 1304 (11th Cir. 2024).......................................... 17
*Goddard v. City of Albany*, 684 S.E.2d 635 (Ga. 2009).................................... 11
*In re Grand Jury Proceeding*, 842 F.2d 1229 (11th Cir. 1988)........ 9, 10, 11, 12
*In re Grand Jury Proceedings*, 616 F.3d 1186 (10th Cir. 2010) ....................... 8
*In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, No. MC 26-
    12 (JEB), 2026 WL 710202 (D.D.C. Mar. 13, 2026)............................... 14, 15
*In re Grand Jury Subpoenas to Off. of New York State Att'y Gen.*, 814 F.
    Supp. 3d 284 (N.D.N.Y. 2026) ......................................................................... 19
*Musacchio v. United States*, 577 U.S. 237 (2016)............................................. 16
*NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449 (1958) ............................. 9
*Nieves v. Bartlett*, 587 U.S. 391 (2019) ........................................................... 15
*People v. Trump Organization, Inc.*, Case No. 451685/2020, 2022 WL
    489625 (N.Y. Sup. Ct. Feb. 17, 2022) ............................................................ 14
*Pickens v. Hollowell*, 59 F.3d 1203 (11th Cir. 1995) ....................................... 16
*Prospero v. Sullivan*, 153 F.4th 1171 (11th Cir. 2025) .................................... 15
*Robert L. "Robb" Pitts, et al. v. United States*, Civil Action No. 1:26-CV-
    00809-JPB (N.D. Ga. May 6, 2026) ............................................................ 1, 16
*Trump v. Vance*, 977 F.3d 198 (2d Cir. 2020)..................................................... 7
*United States v. Nixon*, 418 U.S. 683 (1974) ..................................................... 4
*United States v. R. Enterprises, Inc.*, 498 U.S. 292 (1991) .......................passim
*United States v. US Infrastructure, Inc.*, 576 F.3d 1195 (11th Cir. 2009)........ 5
*United States v. Wilson*, 262 F.3d 305 (4th Cir. 2001).................................... 13

## Statutes

52 U.S.C. § 20511(2)(B) (2026) ........................................................................... 1
52 U.S.C. § 20701 (2026) ..................................................................................... 1
O.C.G.A. § 50-18-70 (2025) ............................................................................... 11
O.C.G.A. § 50-18-72 (2025) ............................................................................... 11
O.C.G.A. § 50-18-74(a) (2025)........................................................................... 11
O.C.G.A. § 50-18-77 (2025) ............................................................................... 11

## PROCEDURAL HISTORY

Petitioner filed this motion on May 4, 2026. Two days later, Judge Boulee denied Petitioner's Rule 41(g) motion filed February 5, 2026 seeking the return of ballots seized by the FBI on January 28, 2026 under a search warrant issued upon a finding of probable cause by Magistrate Judge Salinas that violations of 52 U.S.C. §§ 20701 (2026) and 20511(2)(B) occurred. Judge Boulee held that Petitioner failed on each of the four prongs of its assigned burden to prevail on the Rule 41(g) motion: (1) that the government displayed "callous disregard" for Petitioner's constitutional rights; (2) that the Petitioner had an individual interest in and need for the seized documents; (3) that the Petitioner would be irreparably injured by denial of the return of the documents; and (4) that Petitioner lacked an adequate remedy at law. *Robert L. "Robb" Pitts, et al. v. United States*, Civil Action No. 1:26-CV-00809-JPB (N.D. Ga. May 6, 2026) (Docket # 108, attached as Exhibit 1 hereto).[1]

Proceedings on the Rule 41(g) motion consumed three months. Three weeks after the March 27 evidentiary hearing, the government initiated the

---

[1] The government requests the Court to take judicial notice of the record in the Rule 41(g) proceeding. Fed. R. Evid. 201(c)(2); *see Paez v. Secretary*, 947 F.3d 649, 651-52 (11th Cir. 2020) (court can take judicial notice of court dockets and filings).

extant grand jury subpoena on Friday, April 17. The FBI case agent served the subpoena the following Monday, April 20.

Petitioner did not seek to negotiate the scope of the subpoena or communicate any objection. On April 29, six days before the grand jury return date of May 5, Petitioner's counsel emailed a request for "a 14-day extension of time to object, respond, or file an appropriate motion" and stated, "we are still assessing whether the subpoena has an appropriate legal basis." The government responded that it would extend the deadline for production but not for objections or motions. Three business days later, Petitioner filed this motion arguing that the subpoena is "unprecedented and harassing," is purposed to "target, harass, and punish the President's perceived political opponents," is "grossly overbroad and untethered to any reasonable need," is invalid because "statutes of limitations have expired for any purported 2020 election crimes," "burdens the First Amendment rights of election workers," and "unreasonably interferes with Georgia's sovereign authority to administer elections." Doc. #1729 (hereinafter "Mot.") at 2.

## FACTS

The sole factual record submitted by Petitioner is a copy of the grand jury subpoena. Petitioner's lurid characterizations notwithstanding, the subpoena seeks only one thing: records identifying persons reasonably likely

2

to be able to shed light on the irregularities in the Fulton County 2020 election under investigation. Although unnecessary to the resolution of the motion and without burden to do so, the government proffers an in camera showing of findings from its analysis of the seized ballots, the revelation of which to Petitioner or the public would impair the prospects of the ongoing investigation. In camera review would clarify the need for identification of potential witnesses across Petitioner's in-person voting operations as well as couriers and central elections administration staff. But the need is already sufficiently clear from the probable cause affidavit under the standard that governs.

## ARGUMENT

The grand jury is an "investigatory body charged with the responsibility of determining whether or not a crime has been committed." *United States v. R. Enterprises, Inc.*, 498 U.S. 292, 297 (1991). Its powers are broad. It "can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not." *Id.* (internal quotations and citations omitted). A grand jury "ascertain[s] whether probable cause exists" by "inquir[ing] into all information that *might possibly bear* on its investigation until it has identified an offense or has satisfied itself that none has occurred."

3

*Id* (emphasis added). Thus, "[a]s a necessary consequence of its investigatory function, the grand jury paints with a broad brush." *Id.*

Petitioner's motion ignores these fundamental principles of the grand jury. It references *R. Enterprises*, the controlling authority, but completely disregards (and omits to state) its principal holding. According to Petitioner, *R. Enterprises* stands for the propositions that "grand juries are not licensed to engage in arbitrary fishing expeditions, nor may they select targets of investigation out of malice or an intent to harass" and that Rule 17(c)(2) empowers the court to quash a subpoena when compliance would be unreasonable or oppressive. Mot. at 2-3 (brackets omitted). Relatedly, Petitioner cites *United States v. Nixon*, 418 U.S. 683, 700 (1974), for the proposition that the instant subpoena reflects an "impermissible 'fishing expedition.'" Mot. at 16-17.

The central holding of *R. Enterprises*, however, was that "the *Nixon* standard" — requiring the government to show "relevancy, admissibility, and specificity" in order to enforce a trial subpoena — "does *not* apply in the context of grand jury proceedings" and that the Court of Appeals "committed error" by plac[ing] an initial burden on the Government" to demonstrate a grand jury subpoena's reasonableness. 498 U.S. at 296, 300 (emphasis added). A "grand jury subpoena issued through normal channels is presumed to be reasonable," the Court said, "and the burden of showing unreasonableness must be on the

4

recipient who seeks to avoid compliance." *Id.* at 301; *see also United States v. US Infrastructure, Inc.*, 576 F.3d 1195, 1214 (11th Cir. 2009) ("The law presumes, absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority.") (internal quotes and brackets omitted).

The case language quoted by Petitioner — that the grand jury's investigatory powers are "not unlimited" and not a "license[ ] to engage in arbitrary fishing expeditions" — introduced the Court's undertaking to "define" the "unreasonable or oppressive" threshold for court supervision under Rule 17(c) in the context of a grand jury subpoena. *R. Enterprises*, 498 U.S. at 299-300. Considering the needs to "not impair the strong governmental interests in affording grand juries wide latitude, avoid[ ] minitrials on peripheral matters, and preserv[e] a necessary level of secrecy," *id.* at 300, the Court concluded: "[W]here, as here, a subpoena is challenged on relevancy grounds, the motion to quash must be denied unless the district court determines that there is no reasonable possibility that the category of materials the government seeks will produce information relevant to the general subject of the grand jury's investigation." *Id.* at 301. That is the controlling standard for the present motion.

The Court also observed that a "blanket denial" from the subpoenaed party is insufficient to establish "no reasonable possibility": "A grand jury need

not accept on faith the self-serving assertions of those who may have committed criminal acts. Rather, it is entitled to determine for itself whether a crime has been committed." *Id.* at 303. Thus, Petitioner's categorical assertions and speculation about "debunked conspiracy theories," Mot. at 17, and that "known facts foreclose any conceivably proper purpose," Mot. at 12, do not meet their burden.

Petitioner's approach threatens to undermine the grand jury's very purpose. It "invite[s] procedural delays and detours while courts evaluate the relevancy and admissibility of documents sought by a particular subpoena," where such delays and detours would "impede [the grand jury's] investigation and frustrate the public's interest in the fair and expeditious administration of the criminal laws." *R. Enterprises, Inc.*, 498 U.S. at 292. It also endangers the confidentiality of grand jury proceedings, which are protected by federal law. Requiring the government to "explain in too much detail the particular reasons underlying a subpoena threatens to compromise the indispensable secrecy of grand jury proceedings." *Id.* at 292–293. "Broad disclosure also affords the targets of investigation far more information about the grand jury's internal workings than the *Federal Rules of Criminal Procedure* appear to contemplate." *Id.* at 293.

6

## I.   THE SUBPOENA SEEKS RELEVANT DOCUMENTS.

It is indisputable that the subpoena seeks documents that meet the *R. Enterprises* standard. A subpoena for a list of employees and workers involved in the 2020 Fulton County election cannot conceivably hold "no reasonable possibility" of producing information bearing on an investigation of that election. Such a subpoena is completely orthodox, and its relevance is obvious.

## II.   THE SUBPOENA IS NOT OVERBROAD.

The *R. Enterprises* standard also controls Petitioner's overbreadth challenge. (*See* Mot. at 14-18.) *Trump v. Vance*, 977 F.3d 198, 206 (2d Cir. 2020)[2] ("To prevail on an overbreadth challenge in practice [ ], the moving party must show that a particular category of documents can have no conceivable relevance to any legitimate object of investigation by the grand jury.") (internal quotes omitted; citing *R. Enterprises*). "Whether [a] subpoena is overbroad is measured against 'the general subject of the grand jury's investigation.'" *Id.* at 208 (quoting *R. Enterprises*). "It is neither uncommon nor unlawful for grand jury subpoenas to seek categories of documents that may include some documents that ultimately prove to be unhelpful to the grand jury's investigation." *Id.* at 213. After all, the standard references not the

---

[2] Although the Second Circuit evaluated a state grand jury subpoena for documents, it noted that "the standards governing challenges to grand jury subpoenas on the grounds of overbreadth and bad faith are substantively identical under New York and federal law." *Id.* at 206 n. 5.

7

"materials" but "the category of materials the Government seeks." *R. Enterprises*, 498 U.S. at 301. This "contemplates that the district court will assess relevancy based on the broad types of material sought by the Government" and "forecloses [a] document-by-document or line-by-line approach to assessing relevancy." *In re Grand Jury Proceedings*, 616 F.3d 1186, 1202 (10th Cir. 2010).

> A non-categorical approach … unduly disrupt[s] the grand jury's broad investigatory powers and its unique function to inquire into all information that might possibly bear on its investigations. … The Government often is not in a position to establish the relevancy with respect to specific documents, much less specific lines, because (a) it may not know the precise content of the requested documents or particular lines and (b) it may not know precisely what information is or is not relevant at the grand jury investigative stage. In fact, it is for this reason that subpoenas *duces tecum* are often drawn broadly, sweeping up both documents that may prove decisive and documents that turn out not to be. Such a process necessarily involves a fishing expedition by the grand jury, but such fishing is permissible so long as it is not an *arbitrary* fishing expedition and satisfies the *R. Enterprises* relevancy standard. *See R. Enterprises,* 498 U.S. at 299 … (noting that "[g]rand juries are not licensed to engage in arbitrary fishing expeditions").

*Id.* at 1203 (emphasis by court; some internal citations and quotes omitted).

Petitioner's incorrect reliance upon *Nixon's* inapt "fishing expedition" language, omission to disclose that *R. Enterprises* rejected the *Nixon* standard in the grand jury subpoena context, and apparent failure to comprehend the Tenth Circuit's distinction between "fishing" necessary to the grand jury investigative process and an arbitrary fishing expedition disconnected from the

8

investigative subject matter are all fatal to Petitioner's latest attempt to disrupt this investigation. This is not a *Nixon* fishing expedition. After all, a magistrate judge of this Court has found probable cause to believe violations of federal law occurred. The *category* of documents identifying witnesses to these possible crimes is plainly relevant. Under the *R. Enterprises* standard, that forecloses arguments about whether every one of the persons whose identities are revealed to the grand jury will turn out to be the correct ones.

## III. NO FIRST AMENDMENT INTERESTS ARE JEOPARDIZED BECAUSE, INTER ALIA, ELECTION WORKERS' IDENTITIES ARE PUBLIC RECORD.

The utter frivolousness of Petitioner's attack on the subpoena becomes even clearer upon examining its argument that First Amendment interests are at stake. (Mot. at 18-22.) Petitioner attempts to assert a claim of associational privacy on behalf of election workers sought to be identified via the subpoena, citing *In re Grand Jury Proceeding*, 842 F.2d 1229 (11th Cir. 1988). As explained by that court, the First Amendment freedom of association "necessarily entail[s] the right to privacy in [group] association, for inviolability of privacy in group association may in many circumstances be indispensable to preservation of freedom of association, particularly where a group espouses dissident beliefs." *Id.* at 1232 (internal quotes omitted; citing *NAACP v. Alabama ex rel. Patterson*, 357 U.S. 449, 462 (1958)). In such cases, disclosure of group member identities can be compelled only where the

9

government "convincingly show[s] a substantial relation between the information sought and a subject of overriding and compelling state interest." *Id.* at 1232–33.

This protection applies in cases of "expressive association" — that is among "organizations and individuals whose 'association' furthers … expressive activity" and not in its absence. *Id.* at 1234 (citing "escort services" and "vendor of sno-cones to schoolchildren" as examples of associational activity outside the protection).[3] Petitioner asserts that the grand jury subpoena in issue "will inevitably chill the associational rights of" the election workers it seeks to identify, but cites no authority that working for a public election authority constitutes a private expressive association. That proposition does not bear examination.

Election authorities are the antithesis of an advocacy group. Their assigned role is neutrality, not advocacy. More generally, public employment and contracting is simply not private associational activity. Indeed, Georgia

---

[3] Petitioner's motion states that protection of identities is afforded "regardless of the nature of the association at issue," quoting out of context *Americans for Prosperity Found. v. Bonta*, 594 U.S. 595, 608 (2021). But its footnote 31 expands the quote to reflect that the doctrine applies "whether the beliefs sought to be advanced by association pertaining to political, economic, religious or cultural matters" — that is, regardless of the type of *expressive* association. Nothing in Bonta suggests expansion of expressive association privacy rights beyond expressive associations.

municipalities' employees' and contractors' identities are public record through personnel files made generally public in the Georgia Open Records Act, O.C.G.A. §§ 50-18-70 & -72 (2025). *Goddard v. City of Albany*, 684 S.E.2d 635, 640 (Ga. 2009).[4] And "knowingly and willingly frustrating or attempting to frustrate the access to records by intentionally making records difficult to obtain or review" is a criminal misdemeanor. O.C.G.A. § 50-18-74(a). Petitioner's argument that the First Amendment requires quashing a subpoena for records it is under a statutory command to provide is untenable.

Even assuming election workers have expressive association rights in their relationship with Petitioner, the government has a compelling interest in the information it seeks through the subpoena. The case Petitioner cites held that where such rights exist and are properly asserted, circumstances paralleling those at hand "established a justification for th[e] infringement." 842 F.2d at 1236. "The right to associate for expressive purposes is not absolute. There are governmental interests sufficiently important to outweigh the possibility of infringement." *Id.* (internal quotations and citations omitted).

---

[4] Personal details like "home address, home telephone number, personal mobile or wireless telephone number" are exempted from disclosure to the general public, O.C.G.A. § 50-18-72(a)(21), but readily available to "a state or federal grand jury … or prosecuting attorney in conjunction with an ongoing administrative, criminal, or tax investigation" upon written request, *id.* § 50-18-77.

11

Where the government was conducting a good-faith criminal investigation into "possible criminal violations of the tax laws," the court had "no doubt that this case implicates a compelling governmental interest." *Id.* And by examining records under seal, the court further concluded that the government had shown a "substantial relation" between the information sought and the compelling interest. *Id.* at 1236-37.

Here, with probable cause demonstrated to the satisfaction of a magistrate judge and the challenge to the seizure of documents under warrant rejected by a district judge, the government is conducting a good-faith criminal investigation into possible violations of election laws, which are of like importance to tax laws. The "substantial relation" between identities of the persons who conduct of the election and the subject of the investigation speaks for itself. No further showing should be needed. If, however, the Court wishes to inquire into the range of personnel requested to be identified, the government is prepared to make that showing in camera.

## IV. PETITIONER HAS NOT SHOWN ANY IMPROPER PURPOSE, AND PRIOR PROBABLE CAUSE AND RULE 41(G) DETERMINATIONS SHOW THE OPPOSITE.

Petitioner's remaining substantive arguments, across many pages and subheadings, appear to fall under the rubric of improper purpose. Petitioner asserts that the subpoena's "purpose is to target, harass, and punish the President's perceived political opponents." Mot. at 2. Pages later, Petitioner

12

cites cases for the proposition that "a court can quash a subpoena … issued for an 'improper' purpose." *Id.* at 4-5. Yet no improper purpose is shown.

A. The President's Tweets Do Not Establish an Improper Purpose.

Petitioner reverts to the theme that "the President has obsessively propagated the debunked conspiracy theory that Fulton County 'stole" the 2020 election from him" and "made it clear that he seeks retribution." *Id.* at 7. Petitioner simply ignores that the search warrant affidavit makes clear that the investigation concerns *any* violation of the relevant federal election laws (which would constitute a serious federal offense), whether or not outcome determinative. Instead, Petitioner relies on a litany of accusations and purported quotes of social media posts and re-posts and tales of insults suffered, none of which is properly of record.

But even if it were, the President's tweets and offenses taken have no capacity to prove an improper purpose for a grand jury investigation he does not direct. Petitioner itself states that the subpoena was procured by Bishop, not the President. Petitioner furnishes no evidence that the President directed Bishop to initiate the subpoena (or underlying criminal investigation) and cites no authority for the proposition that animus "was somehow transferred" from one to the other. That supposition is entirely speculative. *Cf. United States v. Wilson*, 262 F.3d 305, 316 (4th Cir. 2001) (in vindictive prosecution analysis, an explicit request to prosecute by a vindictive U.S. attorney was "no evidence"

13

that the animus was transferred to a different, prosecuting U.S. attorney). Petitioner's own cited authority declares that the presumption of regularity accorded to normally issued subpoenas "cannot be rebutted by mere speculation or conjecture." *In re Grand Jury Subpoenas Nos. [Redacted] & [Redacted]*, No. MC 26-12 (JEB), 2026 WL 710202, at *7 (D.D.C. Mar. 13, 2026).

Moreover, even where a <u>prosecutor's</u> comments reflect personal animus — especially through comments in the political sphere — a showing of merit supporting the underlying investigation rebuts any indication of improper purpose in issuance of a grand jury subpoena. For example, although the New York Attorney General made "dozens of public statements" indicating intent to investigate Trump (including, "Oh we're definitely going to sue him. We're going to be a real pain in his ass. He's going to know my name personally."), where a showing was made of "a sufficient basis for continuing [the] investigation," the court declined to quash a grand jury subpoena issued to Trump by her office. *People v. Trump Organization, Inc.*, Case No. 451685/2020, 2022 WL 489625, at *4 (N.Y. Sup. Ct. Feb. 17, 2022) ("As has often been said, that a prosecutor dislikes someone does not prevent the prosecution."). Even Petitioner's cited authority is to like effect:

> [T]he separate rule that subpoenas may be quashed if their dominant purpose is improper requires weighing the evidence of improper purpose against the strength of the Government's

14

> reasons for issuing the subpoena. In the rare case when the evidence of improper purpose is overwhelming, that might require the Government to show something akin to probable cause.

*Nos. [Redacted] & [Redacted]*, 2026 WL 710202, at \*7. Here, Petitioner offers no evidence of improper purpose, and probable cause has already been shown and adjudicated. So, Petitioner is not entitled to quashing of the subpoena. *Cf. Prospero v. Sullivan*, 153 F.4th 1171, 1183 (11th Cir. 2025) ("the presence of probable cause should generally defeat a First Amendment retaliatory arrest claim") (quoting *Nieves v. Bartlett*, 587 U.S. 391 (2019); internal quotes and brackets omitted).

### B. Rehashed Statute of Limitations and Sovereignty Arguments Do Not Establish Improper Purpose.

Petitioner's final arguments on this issue resurrect contentions rejected by Judge Boulee in the Rule 41(g) proceeding — that the government's criminal investigation (and here, the issuance of the subpoena) is improper because the statute of limitations has run and it intrudes on Georgia's sovereignty. Mot. at 12-13, 22-23. As before, Petitioner cites no authority so holding. And, as before, the answers remain the same.

The statute of limitations is an affirmative defense "that must be asserted on the trial by the defendant in criminal cases." *Biddinger v. Comm'r of Police of City of New York*, 245 U.S. 128, 135 (1917). "[A] statute-of-limitations defense becomes part of a case only if the defendant puts the

15

defense in issue." *Musacchio v. United States*, 577 U.S. 237, 248 (2016). "The existence of a statute of limitations bar is a legal question that is appropriately evaluated by the district attorney or by a court after a prosecution [has] begun, not by police officers executing an arrest warrant." *Pickens v. Hollowell*, 59 F.3d 1203, 1207–08 (11th Cir. 1995). At this stage, there is not even a defendant to raise statute of limitations arguments.

Regardless, how applicable limitations periods will be calculated given conduct that may have occurred during various inquiries and investigations following the November 2020 election (as detailed in the affidavit) remains to be seen. *See Pickens*, 59 F.3d at 1208 ("[W]hether a valid statute of limitations defense exists is not a cut and dry matter."). Any subsequent criminal acts, or acts in furtherance of a criminal conspiracy, would restart the limitations period. Notably, Judge Boulee determined that the Court could not "ignore that a witness told [an FBI Special Agent] that some of the ballot images may have been modified as recently as January 11, 2024—which is well within the statutory period." *Pitts, et al.*, at 51-52. Regardless, the statute-of-limitations calculations will be fact-specific — which underscores why courts examine limitations defenses raised in concrete prosecutions, not when subpoenas are issued. The possibility of such a defense does not defeat probable cause and does not undermine the basis for the subpoena.

16

Nor is there any conflict between the government's investigation or the present subpoena and Petitioner's "sovereign interests in safeguarding election integrity." Petitioner's sole citation on this point is to a concurrence that includes the remark that "no statutory [ ] authority gives 'the President or DOJ power to intervene in Georgia's elections'" and that the federal election statutes in Chapters 205 and 207 of Title 52 — including those addressed by the probable cause affidavit — "focus on civil-rights violations, not purported voter fraud." Mot. p. 23 (citing *Georgia v. Clark*, 119 F.4th 1304, 1315 (11th Cir. 2024) (Rosenbaum, J., concurring). For one thing, a grand jury subpoena concerning an election that took place nearly six years ago does not constitute intervention in an election. For another, the concurrence is not law, and it says nothing to invalidate a federal criminal investigation of possible violations of two of those (broadly worded) statutes, 52 U.S.C. §§ 20511 and 20701. Section 20511(2)(B) expressly encompasses "the procurement, casting, or tabulation of ballots that are known by the person to be materially false, fictitious, or fraudulent." Because the investigation is valid, the subpoena is valid.

## II. THE FORM AND ISSUANCE OF THE SUBPOENA WERE PROPER.

Finally, Petitioner scatters procedural sniping throughout its motion but never makes clear whether it contends these issues justify quashing the subpoena. They do not.

17

Petitioner acknowledges that "in modern federal practice, prosecutors often issue grand jury subpoenas with little or no involvement of the grand jurors themselves," Mot. at 3, and "without the grand jury's authorization or awareness" and that the practice is proper, *id.* at 6 n.6. It further notes that the U.S. Attorney "may obtain subpoenas issued in blank by the court, fill in the blanks, and have the witness served without consulting the grand jury." *Id.* But Petitioner's footnote includes repeated quotes that prosecutors cannot use grand jury subpoenas "without the intended participation of the grand jury" and states in the accompanying text that "there is no indication from the face of the Subpoena that the grand jury is even aware of this investigation [or] that the records will be returned to the grand jury." *Id.* at 6 n.6 & 7. Petitioner's point is unclear, but the government agrees that the issuance of the subpoena was proper and orthodox.

Petitioner asserts that an AUSA from the Middle District of North Carolina "working at the direction of U.S. Attorney Dan Bishop" "issued" the subpoena, *id.* at 1, but the subpoena is captioned for this Court and signed by its clerk, Mot. Ex. A. The face of the subpoena states that the North Carolina AUSA "requested" the subpoena. The accompanying correspondence bearing letterhead of the United States Attorney's Office for the Northern District of Georgia appears over the typewritten signature of Bishop as "Special Attorney to the AG and United States Attorney," subsigned by the same AUSA. *Id.*

18

Petitioner offers no challenge to the authority of Bishop and, to the contrary, cites two news articles reporting his appointment as special attorney by the Attorney General "to pursue election-related probes across the country."[5] *Id.* at 1 n.1, 6 n.4. This alone distinguishes *In re Grand Jury Subpoenas to Off. of New York State Att'y Gen.*, 814 F. Supp. 3d 284, 298–99 (N.D.N.Y. 2026), which quashed a subpoena based on defects in the issuing official's authority. The point of Petitioner citing it is unclear.

Petitioner asserts that the subpoena "directs the FBRE to send … to the email accounts of an out of district AUSA and an FBI agent." *Id.* at 2; *see also id.* at 6 ("the Subpoena does not require that the FBRE provide the records to the grand jury; instead, it directs that the records be routed out of this district …"). In fact, the face of the subpoena "commands" Petitioner to appear at GJ# 1-26 in the United States Courthouse in Atlanta at 9:00 AM on May 5, 2026 and to bring responsive documents.[6] *Id.* Ex. A. It does not "direct" the sending of documents out of the district but offers the option to supply records in lieu of appearance by sending them to the requesting AUSA "and/or" the FBI case

---

[5] In a footnote Petitioner claims to reserve objection to Bishop's authority for later assertion. *Id.* at 4 n.3.

[6] This speaks incidentally to Petitioner's musings whether the government is attempting to use grand jury subpoenas independent of the grand jury. If Petitioner complied with the subpoena by appearing before the grand jury, the grand jury would be aware.

agent assigned to the Atlanta Field Office. It also invites questions by telephone to the case agent. In this way, the subpoena issued is like grand jury subpoena issued in federal investigations across the country. It is not unique or irregular.

This meandering, self-contradictory, and inaccurate critique of procedural details appears to be pointless. The form of the subpoena is proper, the prosecuting Special Attorney is unchallenged, and the commanded grand jury return refutes any suggestion of usage independent of the grand jury. This final argument also fails.

## CONCLUSION

For these reasons, the Court should deny Petitioner's motion to quash and should correspondingly grant the government's cross-motion to enforce.

/s/ DAN BISHOP
DAN BISHOP
Special Attorney to the Attorney General
and United States Attorney for the Middle
District of North Carolina
N.C. State Bar Number 17333
101 S. Edgeworth St., Fourth Floor
Greensboro, NC 27401
Telephone: (336) 332-6333
E-mail: Dan.Bishop@usdoj.gov

20

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to LR 5.1(C) and 7.1(D), that I prepared the

foregoing brief using Century Schoolbook, 13 point font.

> /s/ DAN BISHOP
> DAN BISHOP
> Special Attorney to the Attorney General
> and United States Attorney for the Middle
> District of North Carolina

## CERTIFICATE OF SERVICE

I certify that, given this filing on a sealed docket via email transmittal

to criminal_sealed@gand.uscourts.gov, I have today served a copy of the filing

on counsel of record via email with their express consent pursuant to Fed. R.

Civ. P. 5(b)(2)(E).

This 15th day of May, 2026.

> /s/ DAN BISHOP
> DAN BISHOP
> Special Attorney to the Attorney General
> and United States Attorney for the Middle
> District of North Carolina

21