**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

In re Grand Jury Subpoena No.
2026R00350-01.

Case No. 1:26-cv-02777-WMR

**POSTHEARING BRIEF OF UNITED STATES OF AMERICA
ON PETITIONER'S MOTION TO QUASH AND
CROSS-MOTION TO ENFORCE GRAND JURY SUBPOENA**

At the motion hearing, the Court instructed the parties to brief whether *Grunewald v. United States*, 353 U.S. 391 (1964), means that the statute of limitations would bar any criminal charges arising from this grand jury investigation. The Court also posited that the pending cross-motions turn on whether the subpoena at issue is "reasonable." *R. Enterprises*, 498 U.S. 292 (1991), as the Court recognized, is the central case. The Court indicated that the majority opinion contains "preamble-type" language, and that the Court is inclined to take guidance from Justice Stevens' concurrence and may deem the subpoena unreasonable if possible criminal charges would be time-barred.

*Grunewald* does not render the subpoena unreasonable. It is true that the statute of limitations begins to run when the object of a conspiracy is completed and acts to merely conceal the crime do not extend the period in which a charge must be brought. But the procedural posture of *Grunewald* was entirely different. *Grunewald* involved an appeal of a conviction at trial. An indictment had been returned that defined the scope of the conspiracy and a

record of evidence had been developed at trial. Against that backdrop, the Supreme Court concluded that a jury charge left open the possibility that "the convictions were based on a finding that the overt acts of concealment were done with the single intention of protecting the conspirators' own interests." *Id*. at 414. In contrast, this investigation is currently collecting evidence from which a charging instrument may be drawn. One would have to anticipate the allegations in an eventual indictment to decide now that *Grunewald* barred prosecutions. Given that the investigation is ongoing, that simply is not feasible or procedurally proper. It would circumvent the grand jury's chief function as an investigative body.

In addition, relying on Justice Steven's concurrence to define "reasonableness" would contravene binding authority. In *R. Enterprises,* the Court noted that it had "emphasized on numerous occasions that many of the rules and restrictions that apply at a trial do not apply in grand jury proceedings." *R. Enterprises*, 498 U.S. at 298. "This guiding principle" grounded the Court's decision. *Id*. It is precedent that must be followed, not preamble that can be ignored.

## Table of Contents

POSTHEARING BRIEF OF UNITED STATES OF AMERICA ON PETITIONER'S MOTION TO QUASH AND CROSS-MOTION TO ENFORCE GRAND JURY SUBPOENA ....................................................... i

Table of Contents ..................................................................................iii

Table of Authorities ............................................................................ iv

ARGUMENT ........................................................................................ 1

I.   *GRUNEWALD* IS INAPPOSITE BECAUSE IT IS PROCEDURALLY DISTINGUISHABLE. ............................................................................ 1

II.  THE CONCURRING OPINION IN *R. ENTERPRISES* IS NOT THE LAW. ...................................................................................................5

III. THE *R. ENTERPRISES* MAJORITY OPINION'S REASONING IS PART OF ITS BINDING AUTHORITY. ....................................................... 9

CONCLUSION.................................................................................... 16

CERTIFICATE OF COMPLIANCE................................................. 17

# Table of Authorities

## Cases

*Blair v. United States,* 250 U.S. 273 (1919)..................................................... 5, 13

*Bormuth v. Cty. of Jackson*, 870 F.3d 494 (6th Cir. 2017)................................. 9

*Branzburg v. Hayes*, 408 U.S. 665 (1972)............................................. 10, 11, 13

*Bucklew v. Precythe*, 587 U.S. 119 (2019)......................................................... 9

*Cooper v. Aaron*, 358 U.S. 1 (1958) ................................................................. 6

*Costello v. United States*, 350 U.S. 359 (1956) ............................................... 12

*Fla. Decides Healthcare Inc. v. Fla. Sec'y of State*, No. 25-12370, 2025 WL
    3738554 (11th Cir. Sep. 9, 2025) ........................................................ 9

*Grunewald v. United States*, 353 U.S. 391 (1957).................................... 1, 2, 3

*Hutto v. Davis*, 454 U.S. 370 (1982) (per curiam) .............................................. 5

*In re Sealed Case,* 877 F.2d 976 (D.C. Cir. 1989)........................................... 16

*In re United States*, 441 F.3d 44, 57 (1st Cir. 2006) ...................................... 14

*Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, 132 F.4th 1232 (11th Cir. 2025),
    *cert. denied sub nom. Littlejohn v. Sch. Bd. Leon Cnty.*, No. 25-259,
    2026 WL 1127219 (U.S. Apr. 27, 2026) ............................................... 8

*Marks v. United States*, 430 U.S. 1977 (1977)................................................... 6

*Maryland v. Wilson*, 519 U.S. 408 (1997) ....................................................... 7

*National Institutes of Health v. American Public Health Association,* 606
    U.S. ___, 145 S. Ct. 2658 (2025) ........................................................ 9

*Ramos v. Louisiana,* 590 U.S. 83 (2020)......................................................... 6

*Rivers v. Roadway Exp., Inc.*, 511 U.S. 298 (1994) .......................................... 6

*Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477
    (1989) ............................................................................................ 6

*Schwab v. Crosby*, 451 F.3d 1308 (11th Cir. 2006) .......................................... 8

*Trump v. Vance*, 480 F. Supp. 3d 460 (S.D.N.Y.), *aff'd,* 977 F.3d 198 (2d
    Cir. 2020) ..................................................................................... 4, 5

*Trump v. Vance*, 591 U.S. 786 (2020) .............................................................. 4

*Trump v. Vance*, 977 F.3d 198 (2d Cir. 2020).................................................. 5

*United States v. Calandra*, 414 U.S. 338 (1974) ....................................... 12, 13

*United States v. Doe*, 457 F.2d 895 (2d Cir. 1972) .......................................... 5

*United States v. Maloid,* 71 F.4th 795 (10th Cir. 2023)................................... 6

*United States v. Morton Salt Co.*, 338 U.S. 632 (1950).................................. 10

*United States v. R. Enterprises, Inc.*, 498 U.S. 292 (1991) ................. 7, 8, 10, 12

*United States v. Williams*, 504 U.S. 36 (1992) ............................. 13, 14, 15, 16

iv

## Other Authorities

Amdts. to Fed. R. Crim. P., H.R. Doc. No. 107-203 (2002), https://www.govinfo.gov/app/details/CDOC-107hdoc203/CDOC-107hdoc203 .......................................................................................... 12

Igor Kirman, *Standing Apart to Be A Part: The Precedential Value of Supreme Court Concurring Opinions*, 95 Colum. L. Rev. 2083, 2084 (1995) ............................................................................................... 7

Thomas B. Bennett, et al., *Divide & Concur: Separate Opinions & Legal Change*, 103 Cornell L. Rev. 817 (2018) ........................................................ 7

## Constitutional Provisions

U. S. Const., Art. III, § 1 .................................................................................. 6

# ARGUMENT

## I.   *GRUNEWALD* IS INAPPOSITE BECAUSE IT IS PROCEDURALLY DISTINGUISHABLE.

The Court requested supplemental briefing on Petitioner's argument that *Grunewald v. United States*, 353 U.S. 391 (1957) precludes any federal criminal violations from the 2020 Fulton County election that are not time-barred for prosecution. It does not. *Grunewald* in no way undermines any of the reasons given in the government's opening brief that the statute of limitations might not have expired for various indictable offenses.

The holding in *Grunewald* is merely that "after the central criminal purposes of the conspiracy have been attained," "mere overt acts of concealment," "[a]cts of covering up, even though done in the context of a mutually understood need for secrecy," are not part of the conspiracy or overt acts in furtherance of a conspiracy that extend the statute of limitations for the completed conspiracy. *Id.* at 402.

> But a vital distinction must be made between acts of concealment done in furtherance of the main criminal objectives of the conspiracy, and acts of concealment done after these central objectives have been attained, for the purpose only of covering up after the crime.

*Id.* at 405. The former do extend the limitations period, the Court observed. "Kidnappers in hiding, waiting for ransom, commit acts of concealment in furtherance of the objectives of the conspiracy itself, just as repainting a stolen

1

car would be in furtherance of the conspiracy to steal," each of which *would* extend the applicable statute of limitations. *Id.*

None of this contradicts the government's comments on limitations in its opening brief: "[H]ow applicable limitations periods will be calculated given conduct that may have occurred during various inquiries and investigations following the November 2020 election (as detailed in the affidavit) remains to be seen. Any subsequent criminal acts, or acts in furtherance of the criminal conspiracy, would restart the limitations period." Resp. and Cross-Mot. at 16. Until a specific conspiracy or other criminal charge is identified and defined, it is impossible to determine when its "main criminal objectives" are complete, and whether specific acts of concealment are part of those objectives or merely cover-up afterward. As stated, that "remains to be seen."

In *Grunewald*, defining the contours of the conspiracy remained an open question even after trial and appeal to the United States Supreme Court. *Id.* at 408. The evidence, the Court held, was sufficient to support a theory of conspiracy that was not contemplated by the jury instructions at the first trial but could be at a new trial. *Id.* at 408-15. Here, the subtleties of defining the objectives of the conspiracy in *Grunewald* serve only as a reminder how premature it is to attempt to do so at the outset of the grand jury investigation. That is why the many Supreme Court holdings on grand jury practice forbid imposing such an obligation on the government.

Although this fully dispenses with *Grunewald* as a conceivable obstacle to a grand jury investigation, the government never suggested relying on mere concealment of events that occurred in November and December 2020 as the factual predicate to avoid time bars. Rather, the government pointed out, as did Judge Boulee, evidence in the probable cause affidavit that ballot image files bore indications of being altered as recently as January 2024. The affidavit also recites the unexplained disappearance of hundreds of thousands of ballot images. These may have been destroyed when tabulator data cards were repurposed for use for the 2022 election without having been uploaded or saved. The timing is unknown but may have occurred before the 2022 primary or general election, still well within the applicable statute of limitations.

Moreover, the only conspiracy-type conduct anticipated by the government's brief is "conduct that may have occurred during various inquiries and investigations following the November 2020 election (as detailed in the affidavit)." The probable cause affidavit describes inquiries and investigations ongoing as late as December 2025. Conspiracies to obstruct those proceedings would certainly be timely for prosecution. In *Grunewald*, along with the principal conspiracy charge, obstruction charges were maintained without any limitations issue. *Id.* at 415 ("What we have held as to the statute of limitations disposes of the conviction of the three petitioners under Count 1, but does not touch Halperin's conviction on Counts 5, 6, and 7 for violating 18 U.S.C. §

3

1503."). Whether a conspiracy to obstruct justice occurred in the present matter will be a subject of the grand jury investigation.

Given the many possibilities for timely criminal indictments, a subpoena for information back to the time of the election is well within norms for a grand jury. "Meticulous" consideration of this issue occurs in the district court opinion in *Trump v. Vance*, 480 F. Supp. 3d 460, 484 (S.D.N.Y.), *aff'd,* 977 F.3d 198 (2d Cir. 2020), following the Supreme Court's remand in *Trump v. Vance*, 591 U.S. 786 (2020).[1] It speaks for itself:

> "No magic figure limits the vintage of documents subject to a grand jury subpoena. The law requires only that the time bear some relation to the subject matter of the investigation." *In re Rabbinical Seminary Netzach Israel Ramailis*, 450 F. Supp. 1078, 1084 (E.D.N.Y. 1978) (citing *[In re Grand Jury Subpoena Duces Tecum Addressed to] Provision Salesmen [and Distribs. Union, Local 627, AFL-CIO]*, 203 F. Supp. 575). … Thus, it is clear that, in accordance with the grand jury's broad investigatory powers, a grand jury subpoena may seek documents dating from years outside of the specific time period during which a crime is thought to have been committed.

> Furthermore, even if "some of the requested records are so old as to be beyond the potentially applicable statute of limitations," that "does not render the subpoena unreasonable." *Id.* n.5. Thus, the "subpoena need not be limited to calling for records from a period within the statute of limitations. The grand jury should be able to determine whether there were illegal activities which were begun before the statutory period and continued within it." *Provision Salesmen*, 203 F. Supp. at 578; *see also United*

---

[1] Petitioner's motion/brief cited *Trump*, 591 U.S. at 805, as articulating the standard for quashal, which the district court then applied "meticulously" on remand.

> *States v. Doe*, 457 F.2d 895, 901 (2d Cir. 1972) ("[T]he grand jury's scope of inquiry is not limited to events which may themselves result in criminal prosecution, but is properly concerned with any evidence which may afford valuable leads for investigation of suspected criminal activity during the limitations period." (internal quotation marks and citations omitted)); *United States v. Cohn*, 452 F.2d 881, 883 (2d Cir. 1971) (rejecting argument that witness's testimony, which related "to events which had occurred prior to the limitations period, could not be a basis for indictment").

480 F. Supp. 3d at 496–97; *see also Trump v. Vance*, 977 F.3d 198, 212 n.11 (2d Cir. 2020) (explicitly affirming nine-year sweep of grand jury subpoena, adopting the quote from *United States v. Doe*, 457 F.2d 895, 901 (2d Cir. 1972), and holding, "For the same reason, *the President's argument that the relevant period for the subpoena should be limited by the criminal statutes of limitation has no merit*.") (emphasis added). Petitioner "is not entitled to set limits to the investigation that the grand jury may conduct." *Blair v. United States,* 250 U.S. 273, 282 (1919). There is thus no basis to deem the subpoena unreasonable.

## II.  THE CONCURRING OPINION IN *R. ENTERPRISES* IS NOT THE LAW.

It would conflict with *R. Enterprises*' majority opinion to use a general skepticism about timeliness of a possible future indictment to truncate the investigation under a "balancing" approach suggested by Justice Stevens' concurrence. Lower courts are duty-bound to respect "the hierarchy of the federal court system created by the Constitution and Congress." *Hutto v. Davis*, 454 U.S. 370, 375 (1982) (per curiam). They must follow a precedent of the

5

Supreme Court unless and until that Court overrules it. *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989); *Rivers v. Roadway Exp., Inc.*, 511 U.S. 298, 312 (1994) ("[O]nce the Court has spoken, it is the duty of other courts to respect that understanding of the governing rule of law."). This is called "vertical stare decisis." *See, e.g., United States v. Maloid,* 71 F.4th 795, 808 (10th Cir. 2023) ("rigid adherence to vertical stare decisis is paramount"); *Ramos v. Louisiana,* 590 U.S. 83, 124 n.5 (2020) (Kavanaugh, J., concurring) (distinguishing horizontal stare decisis: "By contrast, vertical stare decisis is absolute, as it must be in a hierarchical system with 'one supreme Court.' U. S. Const., Art. III, § 1.").

The holding of an opinion of the Court joined by five justices is a precedent that binds a lower court. *See Marks v. United States*, 430 U.S. 188, 193 (1977) (except when the Court is splintered, the holding is "a single rationale explaining the result [that] enjoys the assent of five Justices"); *Cooper v. Aaron*, 358 U.S. 1, 18 (1958) ("the interpretation of the [law] enunciated by this Court … is the supreme law of the land"). Except in rare circumstances, concurrences are not the law.[2] That is so even for a concurrence

---

[2] Only when no opinion has garnered a majority vote, a concurring opinion may be looked to for the holding, which "may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds." *Marks*, 430 U.S. at 193.

by a justice who joins and elaborates on or nuances the majority opinion. *Maryland v. Wilson*, 519 U.S. 408, 412-13 (1997) (observing that a statement in a prior-case concurring opinion by a justice who joined the majority opinion did not "implicitly decide[ ] this question" because such a statement does not "constitute[ ] binding precedent"); Igor Kirman, *Standing Apart to Be A Part: The Precedential Value of Supreme Court Concurring Opinions*, 95 Colum. L. Rev. 2083, 2084 (1995) (terming this a "simple" concurrence). It is doubly so for a "concurrence in judgment," which "is really a dissent from the rationale of the majority opinion." Igor Kirman, *supra*, at 2084; Thomas B. Bennett, et al., *Divide & Concur: Separate Opinions & Legal Change*, 103 Cornell L. Rev. 817, 841 (2018) ("lower courts … must obey majority opinions, and … not follow concurrences at odds with those majority opinions").

In *R. Enterprises*, Justice Stevens and two other Justices concurred only in the judgment and the parts of the majority opinion (Parts I and II) setting forth the procedural history and general legal background. 498 U.S. 292, 306 (1991). They dissented in effect from:

- Part III-A defining "unreasonable" in the context of grand jury subpoenas to mean "no reasonable possibility that the category of materials" sought "will produce information relevant to the general subject of the grand jury's investigation." *Id.* at 299-301.

- Part III-B stating in dictum that "a court may be justified … in requiring the Government to reveal the general subject of the

grand jury's investigation" in camera and possibly to a respondent alleging unreasonableness. *Id.* at 301-02.

- Part IV concluding that the Court of Appeals erred by quashing subpoenas against two companies not shown by the government to have shipped sexually explicit materials; common ownership of those companies and a third that *did* ship such materials made it "a reasonable possibility" that subpoenaed records "would produce information relevant to the grand jury's investigation." *Id.* at 302-03.

Because at least six justices joined all parts of the majority opinion, it binds this Court.[3] The approach of the concurrence — "balanc[ing] the burden of compliance, on the one hand, against the governmental interest in obtaining the documents on the other," in order to "constrain[ ] the overzealous prosecutor" — is not the law. *See id.* at 303-04, 306. This Court's assessment of reasonableness must conform to the majority's constraints in *R. Enterprises* and take no guidance from the concurring opinion.

---

[3] Part III-B may be non-binding on grounds that it is explicit dictum. That, of course, does not limit the persuasive value of that part of the opinion. After all, "there is dicta, and then there is Supreme Court dicta." *Schwab v. Crosby*, 451 F.3d 1308, 1325 (11th Cir. 2006); *see also Littlejohn v. Sch. Bd. of Leon Cnty., Fla.*, 132 F.4th 1232, 1242 (11th Cir. 2025), *cert. denied sub nom. Littlejohn v. Sch. Bd. Leon Cnty.*, No. 25-259, 2026 WL 1127219 (U.S. Apr. 27, 2026) (explaining that the Eleventh Circuit has "long distinguished" between "dicta" and "Supreme Court dicta" and noting that the Court gives the latter's "reasoning and its clear implications substantial weight.").

## III. THE *R. ENTERPRISES* MAJORITY OPINION'S REASONING IS PART OF ITS BINDING AUTHORITY.

Petitioner asserted in the final minute of the hearing that *R. Enterprises* "is not controlling" because the challenge to the grand jury subpoena is on grounds other than relevance.[4] But to adopt Petitioner's position would necessitate rejecting the Supreme Court's reasoning not only in *R. Enterprises* but a slew of other cases also.

"[J]ust as binding as [a] holding is the reasoning underlying it." *Bucklew v. Precythe*, 587 U.S. 119, 136 (2019); *National Institutes of Health v. American Public Health Association,* 606 U.S. ___, 145 S. Ct. 2658, 2664 (2025) (Gorsuch, J., concurring) (a decision of the Court including "its reasoning—its *ratio decidendi*"— "binds lower courts as a matter of vertical stare decisis"). "[W]hen there is argument as to whether facts are materially distinguishable, we look to the reasoning of the majority Justices to see what facts and reasoning led to the majority holding." *Bormuth v. Cty. of Jackson*, 870 F.3d 494, 520 (6th Cir. 2017) (Rogers, J., concurring); *see also Fla. Decides Healthcare Inc. v. Fla. Sec'y of State*, No. 25-12370, 2025 WL 3738554, at *5 (11th Cir. Sep. 9, 2025)

---

[4] This abruptly departed from Petitioner's motion/brief, which cited *R. Enterprises* three times in the opening argument with no such caveat. Mot. at 3 & n.2

9

(answering dissent's claim to distinguish precedent by observing that Supreme Court's reasoning nonetheless binds).

The *R. Enterprises* majority's reasoning thoroughly explained the nature of the grand jury in statements this Court termed "preamble" language. It quoted *United States v. Morton Salt Co.*, 338 U.S. 632 (1950), which used the analogy of the grand jury to contrast administrative authority to compel information from the judicial subpoena power. Unlike courts, *Morton Salt* explained, an administrative agency's "power of inquisition" is "more analogous to the Grand Jury, which does not depend on a case or controversy for power to get evidence but **can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not**." *Id.* at 642-43 (language excerpted by *R. Enterprises* bolded). *R. Enterprises* emphasized the breadth and independence of the grand jury inquisitorial function "to inquire into all information that might possibly bear on its investigation," not only until "it has identified an offense" but alternatively "has satisfied itself that none has occurred." 498 U.S. at 297. Implicitly, the latter outcome includes the possibility that no indictable crime is timely for prosecution, but that doesn't preclude the investigation.

The *R. Enterprises* majority quoted *Branzburg v. Hayes*, 408 U.S. 665 (1972), which declined to hold that the First Amendment exempts reporters from grand jury subpoenas:

10

> Similar considerations dispose of the reporters' claims *that preliminary to requiring their grand jury appearance*, the State *must show that a crime has been committed* and that they possess relevant information not available from other sources, *for only the grand jury itself can make this determination*. The role of the grand jury … necessarily includes an investigatory function with respect to *determining whether a crime has been committed* and who committed it. … When the grand jury is performing its investigatory function into a general problem area . . . society's interest is best served by a thorough and extensive investigation. **A grand jury investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed**. Such an investigation may be triggered by tips, rumors, evidence proffered by the prosecutor, or the personal knowledge of the grand jurors. It is *only after the grand jury has examined the evidence that a determination of whether the proceeding will result in an indictment can be made*.

*Branzburg*, 408 U.S. at 701-02 (1972) (italics added; language excerpted by R. *Enterprises* bolded; internal citations and quotes omitted). Following this, *R. Enterprises* concluded, "[T]he Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists." It is incongruent that the government be obliged to show not only probable cause but also timeliness of some resulting charge to justify such a subpoena. That would flout the Supreme Court's binding reasoning.

Other Supreme Court holdings cited by the *R. Enterprises* majority illuminate other aspects of the grand jury's independence and function.

11

*Costello v. United States*, 350 U.S. 359 (1956), declined to enforce the hearsay rule in grand jury proceedings, since that "would run counter to the whole history of the grand jury institution, in which laymen conduct their inquiries unfettered by technical rules." *Id.* at 364, *cited by R. Enterprises*, 498 U.S. at 298. Another case cited, *United States v. Calandra*, 414 U.S. 338 (1974), held that a grand jury witness cannot invoke the exclusionary rule — amid circumstances especially relevant here — because to do otherwise would disrupt and delay the grand jury's "historic role and functions" and "wide latitude." *Id.* at 343, 349.

In *Calandra,* the grand jury witness was an investigational target who *won a Rule 41(g)[5] motion* on grounds that a warrant under which incriminating evidence was seized issued without probable cause. *Id.* at 340-42. But the Court *reversed* lower court orders excusing the target from a grand jury subpoena, even though he would face questions derived from unlawfully seized evidence. *Id.* at 341-42. Moreover, the Court explicitly approved use before the grand jury of "both the evidence seized during the course of an unlawful search and seizure and any question or evidence derived therefrom." *Id.* at 354-55.

---

[5] At the time of *Calandra*, Rule 41(g) was subsection (e). *See* Amdts. to Fed. R. Crim. P., H.R. Doc. No. 107-203 at 420 (physical p. 424) (2002), https://www.govinfo.gov/app/details/CDOC-107hdoc203/CDOC-107hdoc203.

The Court rejected the dissent's urging that to do so would "sanction illegal government conduct." *Id.* at 355 n.11. It observed that the witness "may have other remedies" including a *Bivens* claim against officers, the right to "seek return of the illegally seized property," and exclusion of it and its fruits "as evidence against him in a criminal trial," *id.* at n.10 — but not quashal of grand jury testimony.[6] This reasoning is sharply at odds with the notion that this Court could refuse to enforce a grand jury subpoena against a party that *lost* a Rule 41(g) motion on grounds that a resulting indictment would be time-barred.

*R. Enterprises*, *Branzburg*, *Calandra*, and *Costello* are not the Supreme Court's final or maximal word on the independence of the grand jury. *United States v. Williams*, 504 U.S. 36 (1992), once again "sharply cabined" the

---

[6] Amazingly, Petitioner quoted *Calandra* in its motion/brief — with no disclosure of this holding or supporting reasoning — as its lead authority to argue that an expired statute of limitations renders a grand jury subpoena improper. Even the quote — that the grand jury's purpose is "to determine whether a crime has been committed and whether criminal proceedings should be instituted," Mot. at 12 (quoting 414 U.S. at 343-44) — is stripped from its immediate context. The quoted language is sandwiched between "'It [the grand jury] is a grand inquest … the scope of whose inquiries is not to be limited narrowly by questions of propriety or forecasts of the probable result of the investigation, or by doubts whether any particular individual will be found properly subject to an accusation of crime,'" 414 U.S. at 343 (quoting *Blair*, 250 U.S. at 282), and an extended quote from *Branzburg* mostly recapitulated above, which concluded, "It is only after the grand jury has examined the evidence that a determination of whether the proceeding will result in an indictment can be made," *id.* at 344 (quoting 408 U.S. at 701-02).

13

supervisory authority of district courts over grand juries. *In re United States*, 441 F.3d 44, 57 (1st Cir. 2006). It held that a district court may not dismiss an indictment because of the government's failure to disclose exculpatory evidence to the indicting grand jury. *Williams*, 504 U.S. at 37, 52. Again, the Court reasoned from the nature of the grand jury:

> … [T]he grand jury is mentioned in the Bill of Rights, but not in the body of the Constitution. It has not been textually assigned, therefore, to any of the branches described in the first three Articles. It is a constitutional fixture in its own right. In fact the whole theory of its function is that it belongs to no branch of the institutional Government, serving as a kind of buffer or referee between the Government and the people. Although the grand jury normally operates, of course, in the courthouse and under judicial auspices, its institutional relationship with the Judicial Branch has traditionally been, so to speak, at arm's length. Judges' direct involvement in the functioning of the grand jury has generally been confined to the constitutive one of calling the grand jurors together and administering their oaths of office.
>
> The grand jury's functional independence from the Judicial Branch is evident both in the scope of its power to investigate criminal wrongdoing and in the manner in which that power is exercised. …. It need not identify the offender it suspects, or even the precise nature of the offense it is investigating. The grand jury requires no authorization from its constituting court to initiate an investigation, *nor does the prosecutor require leave of court to seek a grand jury indictment.* And in its day-to-day functioning, the grand jury generally operates without the interference of a presiding judge.

*Id.* at 47-48 (citations and internal quotes omitted; emphasis added).

14

Having thus emphasized anew the grand jury's robust independence, *Williams* addressed limits on the power of the district court to deny aid to its subpoenas:

> True, the grand jury cannot compel the appearance of witnesses and the production of evidence, and must appeal to the court when such compulsion is required. And the court will refuse to lend its assistance **when the compulsion the grand jury seeks would override rights accorded by the Constitution**, see, *e.g., Gravel v. United States,* 408 U.S. 606, 92 S.Ct. 2614, 33 L.Ed.2d 583 (1972) (grand jury subpoena effectively qualified by order limiting questioning so as to preserve Speech or Debate Clause immunity), **or even testimonial privileges recognized by the common law**, see *In re Grand Jury Investigation of Hugle,* 754 F.2d 863 (CA9 1985) (opinion of Kennedy, J.) (same with respect to privilege for confidential marital communications). **Even in this setting, however, we have insisted that the grand jury remain "free to pursue its investigations unhindered by external influence or supervision so long as it does not trench upon the legitimate rights of any witness called before it."** *United States v. Dionisio,* 410 U.S. 1, 17–18, 93 S.Ct. 764, 773, 35 L.Ed.2d 67 (1973). Recognizing this tradition of independence, we have said that the Fifth Amendment's "constitutional guarantee *presupposes* an investigative body acting independently of either prosecuting attorney *or judge ....*" *Id.* at 16.

*Id.* at 48-49 (bold emphasis added; italics by Court).

*Williams* then concluded that "any power federal courts may have to fashion, on their own initiative, rules of grand jury procedure is a very limited one, not remotely comparable to the power they maintain over their own proceedings. It certainly *would not permit judicial reshaping* of the grand jury institution, substantially *altering the traditional relationships between the prosecutor, the constituting court, and the grand jury itself. Id.* at 50 (internal

15

citation omitted; emphasis added). Thus, under *Williams*, district courts lack general supervisory authority over grand jury proceedings as a mechanism for policing prosecutorial decisions and actions. *Id.* at 54 & n.8; *see also id.* at 65 (Stevens, J., dissenting) ("the Court today … seems to suggest that the court has no authority to supervise the conduct of the prosecutor in grand jury proceedings so long as he follows the dictates of the Constitution, applicable statutes, and Rule 6 of the Federal Rules of Criminal Procedure"); *In re Sealed Case,* 877 F.2d 976, 981 (D.C. Cir. 1989) (affirming district court's refusal to quash grand jury subpoenas where government had already obtained allegedly attorney-client privileged documents).

*Williams* reflects yet another binding precedent and additional, binding reasoning incompatible with denying enforcement to a grand jury subpoena on grounds that the government has not made a prior showing that conceivably indictable offenses are not time-barred. Correspondingly, Petitioner has not identified a single authority suggesting that as a sufficient basis to quash.

## CONCLUSION

For these further reasons, the Court should deny Petitioner's motion to quash and should correspondingly grant the government's cross-motion to enforce.

16

> */s/ DAN BISHOP*
> DAN BISHOP
> Special Attorney to the Attorney General
> and United States Attorney for the Middle
> District of North Carolina
> N.C. State Bar Number 17333
> 101 S. Edgeworth St., Fourth Floor
> Greensboro, NC 27401
> Telephone: (336) 332-6333
> E-mail:  Dan.Bishop@usdoj.gov

## CERTIFICATE OF COMPLIANCE

I hereby certify, pursuant to LR 5.1(C) and 7.1(D), that I prepared the

foregoing brief using Century Schoolbook, 13 point font.

> */s/ DAN BISHOP*
> DAN BISHOP
> Special Attorney to the Attorney General
> and United States Attorney for the Middle
> District of North Carolina

17