**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

FULTON COUNTY BOARD OF
REGISTRATION AND ELECTIONS,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

CIVIL ACTION FILE NO:

    1:26-cv-02777-WMR

**<u>ORDER</u>**

This matter is before the Court on Petitioner Fulton County Board of Registration and Elections' Motion to Quash Grand Jury Subpoena [Doc. 1] and Respondent the United States of America's Response in Opposition to Petitioner's Motion to Quash [Doc. 9] and Cross-Motion to Enforce Grand Jury Subpoena [Doc. 10].

The breadth of the Grand Jury Subpoena No. 2026R00350-01 [Doc. 1-1] (hereinafter, the "Subpoena") is staggering. It seeks the "name, position/function, residential and email addresses, and personal telephone numbers" of all individuals who reviewed Mail-in Ballots, were assigned to the Voter Review Panel/Board, assigned to any Mobile Voting Location, were involved in the transferring of results or transportation of ballot stock or media, worked in or for the Fulton County Board

1

of Registration and Elections generally, worked or volunteered on election day to review or tabulate ballots, worked or volunteered in the Risk Limiting Audit, worked or volunteered for the Recount, and/or served as precinct managers and assistant managers, for the November 2020 General Election in Fulton County (hereinafter, the "2020 Election").

The Fulton County Board of Registration and Elections (hereinafter, "Fulton County"), in objecting to the Subpoena, points out that the Department of Justice (hereinafter, the "DOJ") is seeking personal identifying information on what would amount to thousands of employees and volunteers who participated in election day activities, the counting of votes, and any audit or recount of votes. Of note is that Fulton County is the most populous county in the State of Georgia per the 2020 census (1,066,710 people) and one of the largest in land area, with approximately 527 square miles.[1] Thus, there is little doubt that Fulton County employs and uses the services of large numbers of people to conduct its elections.

Why is the DOJ seeking this information? It argues that it is engaged in legitimate law enforcement activities. Against that claim is the fact that it has long been the view of the current President of the United States, both before and after he was elected in the 2024 General Election, that he was denied re-election to a second

---

[1] *See* U.S. Census Bureau, *QuickFacts Fulton County, Georgia,* *https://www.census.gov/quickfacts/fact/table/fultoncountygeorgia/POP010220#POP010220* (last visited July 6, 2026).

consecutive term in 2020 due to election fraud. Particularly, he has alleged fraud in states that he won during the 2016 Election, but lost in 2020, which includes Georgia. It was alleged, both then and now, that the genesis of his defeat in Georgia came from supposed fraud at the hands of election officials and others in Fulton County, which provided the final margin of votes in Georgia that decided the 2020 Election. Thus, perhaps it makes sense that the DOJ, now unquestionably under the current President's control, is seeking to identify individuals who might possess information or opinions in support of his claim that the 2020 Election was not legitimate. And, in doing so, the DOJ is using the subpoena power of the Grand Jury.[2]

It should be noted, however, that while the Grand Jury is an independent entity in many respects, it operates under the auspices of the District Court. It is the District Court that summons citizens to serve on the Grand Jury; it is the District Court that selects the individuals to serve on the Grand Jury; it is the District Court that administers the oath of service to the selected members of the Grand Jury; and, it is the District Court that receives the work product of the Grand Jury, namely the indictments of individuals who are alleged to have committed prosecutable crimes. It is true that the Grand Jury works with the DOJ and the applicable United States

---

[2] To be clear, no evidence has been presented to the Court that the actual Grand Jury in the Northern District of Georgia seeks this information, as opposed to the out-of-district prosecutors who the DOJ has appointed to lead this inquiry who have served this Subpoena in the name of the Grand Jury.

Attorney to investigate alleged criminal actions, but that does not give the DOJ the right to use the Grand Jury to do whatever the DOJ wants. The Grand Jury and the tools (i.e. subpoenas) that it uses are tethered to the its authority and the fulfillment of its authorized mission.

So, is there anything wrong with the DOJ using the Grand Jury to subpoena these records from Fulton County? In this Court's view, yes. These records, even if they lead to the DOJ finding individuals who worked for Fulton County in the 2020 Election who support the theory that the 2020 Election was not fair, would not lead to information that could be used to charge anyone with anything, at least not any viable charge. That is because the statute of limitations for any possible crime arising from the 2020 Election has long expired, as the DOJ must have brought such a case, if it could, no later than late 2025 or the early weeks of 2026.[3]

The 2020 Election occurred on November 3, 2020. Audits and recounts occurred in the 2–3 weeks immediately thereafter. The electors of each state (making up the Electoral College) met to cast their vote for President on December 14, 2020. And, the Congress of the United States met to count the certified votes of the Electoral College on January 6, 2021 (although the process was not completed until January 7, 2021, due to well-chronicled events). Thus, an investigation of alleged

---

[3] Had the DOJ moved expeditiously to seek this information after the current President returned to office on January 20, 2024, and within the applicable period of limitations, this Court's analysis may well have been different.

criminal conduct of anyone that may have led to the certification of the 2020 Election in Georgia would not be a legitimate use of the Grand Jury and its subpoena power, in that no valid indictment could issue from said Grand Jury due to the expiration of the applicable statutes of limitations.

The DOJ argues that it has a legitimate interest in investigating potential criminal actions in the years that followed the 2020 Election, including an alleged failure on the part of Fulton County to preserve its ballot images from 2020 for the time required by law. Such alleged failure to preserve records arguably would not be barred by the statute of limitations.[4] However, even if such allegations prove true, of which this Court offers no opinion, the fact remains that the focus of the Subpoena is on what happened (or did not happen) during the 2020 Election and the weeks immediately thereafter, not what may or may not have happened in the years that followed after that election was long over and certified. Thus, acting under its authority (and indeed its responsibility) pursuant to Rule 17(c)(2) of the Federal Rules of Criminal Procedure, the Court grants Fulton County's Motion to Quash.

In these hyper-political times in which we currently live, there are sure to be some who disagree with this decision because they believe the allegations of fraud in the 2020 Election and believe that "light" should be brought to those claims. But,

---

[4] The DOJ also alleges that a certain number of the actual 2020 ballots that it seized pursuant to a search warrant look suspicious.

a couple points are in order. First, nothing prevents a continued inquiry into those allegations by those who believe such claims, such as Congress and perhaps even by the DOJ. It is just that the power of the Grand Jury, which exists to investigate potential crimes and to bring viable indictments thereof, cannot be used as their tool to do so. Second, and relatedly, that this result is fitting is clear if one considers the alternative; otherwise, anyone in power (perhaps the next administration of a different party) could use the Grand Jury process similarly to subpoena personal information of citizens (perhaps that of their political opponents) with no legitimate law enforcement purpose. The information sought herein (names, addresses, phone numbers, emails) is private and sensitive, so much so that should a private company fail to protect such information from electronic thieves, such company would most likely be sued in a data breach class action lawsuit.[5] Thus, everyone, whether you support the President or you do not, or whether you believe the 2020 Election was fair or believe that it was not, should be concerned about the DOJ's ability to utilize the power of the Grand Jury to appropriate your private information without a legitimate purpose.

---

[5] *See e.g.*, *Quincey Hall v. Bitcoin Depot, Inc.*, No. 1:25-cv-04317-WMR (N.D. Ga. 2025), ECF No. 1 at 1 (containing another one of this Court's cases where a class of plaintiffs sued a company due to its "failure to safeguard, monitor, maintain and protect their highly sensitive Personally Identifiable Information" which were disclosed during a data breach).

In this Court's view, the DOJ does not possess a need to enforce the Subpoena greater than the burden of disclosure on Fulton County, and as such, the Court will not enforce it.

## I.  BACKGROUND

### A. The Subpoena

The Subpoena, dated April 17, 2026, requests the following information:

Rosters of Election Staff Members who served in the November 2020 General Election, sufficient to identify name, position/function, residential and email addresses, and personal telephone number(s), including for the following persons, without limitation:

    a.  Individuals assigned to review Mail-In Ballots
    b.  Individuals assigned to the Voter Review Panel/Board
    c.  Individuals assigned to Mobile Voting Locations
    d.  Individuals assigned to transfer results to or from media or to transport ballots, ballot stock, or media
    e.  Individuals employed or contracted by the Fulton County Board of Registration and Elections
    f.  Individuals who worked or volunteered on Election Day who were assigned to review or tabulate ballots
    g.  Individuals who worked or volunteered for the Risk Limiting Audit
    h.  Individuals who worked or volunteered for the Recount
    i.  Individuals who served as precinct managers and assistant managers

[Doc. 1-1 at 3] (hereinafter, the "subpoenaed information").

On May 4, 2026, Fulton County filed its Motion to Quash the DOJ Subpoena. [Doc. 1]. Fulton County asks the Court to quash the Subpoena because it claims: (1) that the DOJ issued the Subpoena for an improper purpose; (2) that the Subpoena is

overbroad and untethered to any reasonable need; (3) that the Subpoena cannot yield evidence relevant to a criminal prosecution; (4) that the Subpoena burdens the First Amendment rights of election workers; and (5) that the Subpoena unreasonably interferes with Georgia's ability to conduct elections. *See* [Doc. 1 at 2].

The DOJ filed a Cross-Motion to Enforce the Grand Jury Subpoena and a Response to the Motion to Quash on May 15, 2026. [Docs. 9, 10].[6] The DOJ argues that the Subpoena is proper and "completely orthodox." [Doc. 10 at 7].

The Court held a hearing on May 19, 2026. *See* [Doc. 14]. During the hearing, Fulton County supported its argument with additional law and facts. Thus, the Court ordered supplemental briefing. [Doc. 15].[7]

---

[6] For the sake of brevity, in the remainder of the Order, the Court cites only to docket entry 10 because docket entries 9 and 10 are identical. *See* [Docs. 9, 10].

[7] Specifically, the Court requested the following briefing from the parties:

1. Respondent shall file a supplemental brief addressing the additional authority and evidence referenced by Petitioner during the hearing within **FOURTEEN (14) DAYS** of the date of the hearing. Petitioner may file a response brief within **FOURTEEN (14) DAYS** after Respondent files its supplemental brief.

2. Respondent shall also file a separate brief addressing any arguments concerning any potential theory of wrongdoing that it contends supports the subpoena at issue within **FOURTEEN (14) DAYS** of the date of this Order. The Court recognizes that the information relevant to this issue may involve confidential investigative material and, therefore, directs the brief to be filed separately so that Respondent may seek leave to file it under seal.

[Doc. 15 at 1–2]. The DOJ filed its supplemental brief on May 28, 2026. [Doc. 19]. Fulton County filed its response on June 11, 2026. [Doc. 33].

Also at the hearing, the DOJ gave the Court an affidavit that it claimed supported the Grand Jury's investigation and need for the subpoenaed information. *See* [Doc. 16 at 85–86]. The DOJ also filed a Motion for *In Camera* Review. [Doc. 32]. In that Motion, the DOJ requests that the Court review both the affidavit and related briefing *in camera*. [*Id*.]. Fulton County opposes that request. [Doc. 34].

## B. Related Litigation

The DOJ references a related but different case[8] also in the Northern District of Georgia. [Doc. 10 at 1, 16]; *see Robert L. "Robb" Pitts, et al. v. United States*, No. 1:26-cv-00809-JPB (N.D. Ga. May 6, 2026) (hereinafter "*Pitts*").[9]

On January 28, 2026, a Magistrate Judge signed a warrant which authorized the seizure of over 600 boxes of election records from Fulton County. *See Pitts*, ECF

---

[8] The Court takes judicial notice of the *Pitts* case and its record. Fed. R. Evid. 201(c); *Cash Inn of Dade, Inc. v. Metro. Dade Cnty.*, 938 F.2d 1239, 1243 (11th Cir. 1991) ("A district court may take judicial notice of public records within its files relating to the particular case before it or other related cases.") (citations omitted).

[9] It is important to note that while *Pitts* is related to the current dispute, the findings of that case are in no way binding on this Court, or on any court for that matter. *See Am. Elec. Power Co., Inc. v. Connecticut*, 564 U.S. 410, 428 (2011) ("[F]ederal district judges, sitting as sole adjudicators, lack authority to render precedential decisions binding other judges, even members of the same court."); *Georgia v. President of the United States*, 46 F.4th 1283, 1304 (11th Cir. 2022) ("[A] district court's decisions do not bind other district courts, other judges on the same court, or even the same judge in another case."). The Court summarizes the *Pitts* case due to the DOJ's reliance on it, as well as for background.

No. 108 at 22. As part of the search warrant application, an FBI agent provided an affidavit to demonstrate probable cause. *Pitts*, *id*. at 11.

After the DOJ executed the search warrant, on February 5, 2026, Fulton County (along with others) filed a Federal Rule of Criminal Procedure 41(g) Motion seeking the return of the election records. *Pitts*, ECF No. 1. On March 27, 2026, United States District Court Judge Boulee held an evidentiary hearing on the Rule 41(g) Motion. *Pitts*, ECF No. 70. On May 6, 2026, Judge Boulee denied Fulton County's Rule 41(g) Motion. *Pitts*, ECF No. 108.

In that order, Judge Boulee found that Fulton County did not satisfy its burden of showing that the Government "callously disregarded" Fulton County's rights through the execution of the search warrant. *Pitts, id*. at 53. At the same time, Judge Boulee noted that the events leading up to the Rule 41(g) Motion were "unprecedented," that the affidavit proffered to obtain the warrant "was defective in some respects," that the affidavit's inclusion of certain statements was "troubling," and that Fulton County had correctly identified some of the affidavit's "features" as "problematic[.]" *Pitts*, *id*. at 68, 36, 37.

## II.    LEGAL STANDARD

Grand juries operate with broad investigatory powers. *See United States v. Calandra*, 414 U.S. 338, 343 (1974) ("Traditionally the grand jury has been accorded wide latitude to inquire into violations of criminal law."). In *United States*

*v. R. Enterprises, Inc.*, the Supreme Court provided a background on the role of the grand jury and its unique subpoena power:

> The grand jury occupies a unique role in our criminal justice system. It is an investigatory body charged with the responsibility of determining whether or not a crime has been committed. Unlike [Article III Courts], whose jurisdiction is predicated on a specific case or controversy, the grand jury can investigate merely on suspicion that the law is being violated, or even just because it wants assurance that it is not. The function of the grand jury is to inquire into all information that might possibly bear on its investigation until it has identified an offense or has satisfied itself that none has occurred. As a necessary consequence of its investigatory function, the grand jury paints with a broad brush. A grand jury investigation is not fully carried out until every available clue has been run down and all witnesses examined in every proper way to find if a crime has been committed.
>
> A grand jury subpoena is thus much different from a subpoena issued in the context of a prospective criminal trial, where a specific offense has been identified and a particular defendant charged. The identity of the offender, and the precise nature of the offense, if there be one, normally are developed at the conclusion of the grand jury's labors, not at the beginning. In short, the Government cannot be required to justify the issuance of a grand jury subpoena by presenting evidence sufficient to establish probable cause because the very purpose of requesting the information is to ascertain whether probable cause exists

*United States v. R. Enters., Inc.*, 498 U.S. 292, 297 (1991) (citations and internal quotation marks omitted). When analyzing a subpoena, courts must begin with the presumption that, "absent a strong showing to the contrary, that a grand jury acts within the legitimate scope of its authority." *Id*. at 300.

The reach of the grand jury is undoubtedly broad; however, "the powers of the grand jury are not unlimited and are subject to the supervision of a judge[.]"

11

*Branzburg v. Hayes*, 408 U.S. 665, 688 (1972) (citing *United States v. Bryan*, 339 U.S. 323, 331 (1950); *Blackmer v. United States*, 284 U.S. 421, 438 (1932)); *see also R. Enters., Inc.*, 498 U.S. at 299 (stating that "[t]he investigatory powers of the grand jury are nevertheless not unlimited" and that "[g]rand juries are not licensed to engage in arbitrary fishing expeditions[.]").

For example, under Rule 17 of the Federal Rules of Criminal Procedure, a "court may quash or modify" a subpoena if it determines that "compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2); *see also Calandra*, 414 U.S. at 346 n.4 ("The grand jury is subject to the court's supervision in several respects . . . . [t]he court may quash or modify a subpoena on motion if compliance would be 'unreasonable or oppressive.'") (citing Fed. R. Crim. P. 17(c)).

Rule 17(c)(2) requires a case-by-case, fact specific inquiry. There is no legal standard which states that, without some facts, the government cannot enforce a subpoena, or that if those facts exist, the government could enforce a subpoena. Rather, the factors that the court must consider under Rule 17(c)(2)— unreasonableness and oppressiveness—cannot be converted into a mechanical rule. Although the terms "unreasonable" and "oppressive" are not defined within Rule 17, courts have determined that those words have "a common sense meaning[.]" *United States v. Cory*, No. 3:20-cr-99-MMH-JRK, 2021 WL 3709797, at *4 (M.D. Fla. Aug. 20, 2021) *objections overruled*, No. 3:20-cr-99(S1)-MMH-LLL, 2022 WL 997336

12

(M.D. Fla Apr. 1, 2022) (quoting *United States v. Simmons*, 515 F. Supp. 3d 1359, 1364 (M.D. Ga. 2021) (other citations omitted)).

## III.   DISCUSSION

Fulton County argues that the Court should quash the Subpoena since it claims that the Subpoena is the DOJ's "latest effort to target and harass the President's perceived political enemies—this time election officials, poll workers, and volunteers in Fulton County whom Donald Trump continues to disparage as he perpetuates his false claim that they 'stole' the 2020 [E]lection." [Doc. 1 at 1].[10]

The DOJ refutes this claim and contends that Fulton County, by opposing the Subpoena, attempts "to undermine the grand jury's very purpose" by obstructing the next step in the investigative process. [Doc. 10 at 6].

Under Rule 17(c)(2), in determining whether to quash a subpoena, courts must assess if a subpoena is unreasonable or oppressive. Therefore, the Court will weigh the Government's investigatory need for the personal information of election workers against the competing burden that Fulton County will suffer in compliance. *See R. Enters., Inc.*, 498 U.S. at 303 ("This Rule requires the district court to balance

---

[10] Fulton County argues that the DOJ possesses a political motivation in enforcing the Subpoena. "[T]he cardinal principle of judicial restraint—if it is not necessary to decide more, it is necessary not to decide more—counsels us to go no further." *PDK Lab'ys, Inc. v. U.S. D.E.A.*, 362 F.3d 786, 799 (D.C. Cir. 2004) (Roberts, J., concurring)). Since the Court has sufficient other grounds to quash the Subpoena, the Court does not reach Fulton County's political motivation arguments. The Court also does not address Fulton County's claims that the Subpoena is, at the very least, overbroad. The Court is doubtful that Fulton County can assert alleged first amendment claims on behalf of its employees or volunteers, but that issue also is not decided herein.

the burden of compliance, on the one hand, against the governmental interest in obtaining the documents on the other.") (Stevens, J., concurring). Importantly, "what is reasonable depends on the context." *Id*. at 299 (quoting *New Jersey v. T.L.O.*, 469 U.S. 325, 337 (1985)).

The Court derives this standard from Justice Stevens' concurrence in *R. Enterprises, Inc.*, 498 U.S. at 303 (Stevens, J., concurring).[11] In its briefing, the DOJ devoted many pages to explaining to the Court that concurrences are not binding precedent and/or that a majority opinion is binding precedent. *See* [Doc. 19 at 5–8 and 9–16]. To be clear, the Court understands that it is not bound by this concurrence, or any concurrence, except in certain circumstances. *See Maryland v. Wilson*, 519 U.S. 408, 412–13 (1997) (stating that a concurrence does not "constitute[] binding precedent"). But, neither must the Court disregard such reasoning when a concurrence addresses an issue before the Court. This is especially true where there is scant binding authority which defines "reasonableness" under Rule 17(c)(2). *R. Enterprises, Inc.* undoubtedly remains the controlling precedent, but presented a different factual dispute.[12] As Justice Stevens observed, the majority opinion may

---

[11] Even without relying on Justice Stevens' concurrence, the Court understands the plain meaning of "reasonable" to be fair, sensible, and logical. Justice Stevens' approach in weighing the need for the information against the burden of compliance seems to engage in a weighing of whether a subpoena is fair, sensible, and logical.

[12] Specifically, in *R. Enterprises, Inc.,* companies challenged a subpoena for its "relevance" rather than its reasonableness. *See R. Enters., Inc.*, 498 U.S. at 301 ("[W]e conclude that where, as here, a subpoena is challenged on relevancy grounds, the motion to quash must be denied unless the

not have "provide[d] adequate guidance to the district court" regarding reasonableness; therefore, the Court finds Justice Stevens' additional reasoning persuasive when examining "reasonableness" under Rule 17(c)(2). *R. Enters., Inc.*, 498 U.S. at 305 (Stevens, J., concurring).[13]

Justice Stevens stated that a movant can "satisfy the initial hurdle" and show "some valid objection to compliance" by illustrating the "volume and location of the requested materials, the mere cost in terms of time, money, and effort of responding to a dragnet subpoena[,]" or a movant can show "that compliance with the subpoena would intrude significantly on [the movant's] privacy interests, or call for the disclosure of trade secrets or other confidential information[.]" *Id*. at 305 (Stevens, J., concurring).

district court determines that there is no reasonable possibility that the category of materials the Government seeks will produce information relevant to the general subject of the grand jury's investigation."). Therefore, the Supreme Court did not reach the issue of whether the subpoena in *R. Enterprises, Inc.* was otherwise reasonable.

[13] Notably, several federal courts have adopted the approach (or a substantially similar approach) articulated in Justice Stevens' concurrence. *See, e.g.*, *In re Grand Jury Subpoena Dated Aug. 14, 2019*, 964 F.3d 768, 773 (8th Cir. 2020) (weighing an organization's confidentiality and internal affairs investigations against "the federal government's interest in enforcing a subpoena to produce documents relevant to a grand jury investigation[.]"); *In re Grand Jury, John Doe No. G.J.2005-2*, 478 F.3d 581, 585–86 (4th Cir. 2007) (concluding that the district court did not abuse its discretion where it weighed a city's interest against the United States' interests to determine the reasonableness of a subpoena); *United States v. Bergeson*, 425 F.3d 1221, 1225–27 (9th Cir. 2005) (weighing the "risk of imminent physical harm to others, magnitude of the case, [and] scarcity of evidence" against "the potential harm from enforcing the subpoena" to determine reasonableness under Rule 17(c)(2)); *In re Grand Jury Subpoena for THCF Med. Clinic Recs.*, 504 F. Supp. 2d 1085, 1089 (E.D. Wash. 2007) (weighing the State of Oregon's various interests against the Government's interest in information related to an investigation).

15

The DOJ claims that the "list of employees and workers involved in the 2020 Fulton County election" is needed to further investigate potential crimes associated with the 2020 Election. [Doc. 10 at 7]. Fulton County combats this claim by arguing that it is burdened by compliance because "[t]he Subpoena is untethered to any valid prosecutorial need, and its sweeping demand for the sensitive personal information of thousands of election officials and volunteers would chill the participation of election workers and impair Fulton County's ability to administer its elections." [Doc. 33 at 1].

For reasons explained hereinbelow, the Court agrees with Fulton County that, in pursuing the Subpoena, the DOJ is engaged in an "arbitrary fishing expedition," such that the Subpoena is unreasonable and must be quashed. *Trump v. Vance*, 591 U.S. 786, 805 (2020) (quoting *R. Enters., Inc.*, 498 U.S. at 299); *see also Ealy v. Littlejohn*, 569 F.2d 219, 227 (5th Cir. 1978) (stating that "[w]hen the grand jury goes on a fishing expedition in forbidden waters, the courts are not powerless to act.").[14]

### A. The DOJ'S Need for the Subpoenaed Information is Low

"The federal grand jury serves two primary roles, sometimes referred to as the 'sword' and 'shield 'functions." 1 Charles Alan Wright & Arthur R. Miller, Federal

---

[14] Decisions of the Fifth Circuit prior to the Eleventh Circuit's split from the Fifth Circuit are binding on the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981).

Practice and Procedure § 102 (5th ed. 2026) (citations omitted). A grand jury has "broad subpoena power," which gives it "the authority to compel the testimony of witnesses and the production of documents and other things, thereby assisting the prosecutor in the investigation of crimes—this is the 'sword' function." *Id*. Then, "[a]fter the evidence is gathered, the grand jurors vote on whether the prosecutor has enough evidence to justify charging someone with a crime; in this capacity, it can act as a shield for the accused against unsupported accusations." *Id*.

The primary purpose of any grand jury is "to determine whether a crime has been committed and whether criminal proceedings should be instituted against any person." *Calandra*, 414 U.S. at 343–44. Thus, the grand jury's broad investigatory power should not override its ultimate purpose: to help the prosecutor indict valid criminal charges. *See Costello v. United States*, 350 U.S. 359, 362 (1956) ("There is every reason to believe that our constitutional grand jury was intended to operate substantially like its English progenitor. The basic purpose of the English grand jury was to provide a fair method for instituting criminal proceedings against persons believed to have committed crimes.").

Importantly, the Supreme Court has made clear that "the applicable statute of limitations . . . is usually considered the primary guarantee against bringing overly stale criminal charges." *United States v. Ewell*, 383 U.S. 116, 122 (1966). It is true that "[a] subpoena is not objectionable merely because it seeks documents beyond

17

the period of the statute of limitations[.]" 2 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 276 (4th ed. 2026) (citations omitted). However, when a subpoena seeks information that is unlikely to result in a prosecutable offense because the applicable statute of limitations has expired, the Court finds that the DOJ's need for that information is diminished compared to circumstances in which the statute of limitations remains open, and prosecution is still possible.

As Fulton County lays out in its briefing, the applicable five-year statute of limitations has run on any alleged crime related to the 2020 Election. [Doc. 1 at 12–14]. Since Congress certified the electoral results at 3:44 a.m., the morning of January 7, 2021,[15] the five-year statute of limitations on any purported crime related to the 2020 Election ran, at the latest, on Wednesday, January 7, 2026, which was six months ago.

Under 18 U.S.C. § 3282, a noncapital offense has a five-year statute of limitations. That statute of limitations applies to offenses under Section 20511 or Section 20701, and the following potential crimes: 18 U.S.C. § 371 (conspiracy to defraud the federal government); 18 U.S.C. § 594 (voter intimidation); 18 U.S.C. § 610 (coercion of political activity); 18 U.S.C. § 1001 (false representations to federal government); 18 U.S.C. § 1512 (tampering with a witness, victim, or informant). *See* 52 U.S.C. § 20511 (knowing and willful effort to interfere with fairly and impartially

---

[15] *See* Nat'l Archives, 2020 Electoral College Results.

conducted election process subject to five-year statute of limitations); 52 U.S.C. § 20701 (willful failure to preserve election records for twenty-two months subject to five-year statute of limitations).

Thus, investigation into these alleged offenses is now "stale." *See Ewell*, 383 U.S. at 122. Without a showing that the subpoenaed information will result in a prosecutable crime, the Court finds the DOJ's need for the subpoenaed information to be questionable, at best. Surely, the DOJ could articulate a "need" for almost any evidence. However, that is not the legal standard. Instead, that low need for the information does not outweigh the burden on Fulton County. The DOJ has made various arguments to revive the statute of limitations for potential wrongdoing related to the 2020 Election, but the Court remains unconvinced by those arguments.[16]

### 1. The DOJ is Not Entitled to Indefinitely Extend the Statute of Limitations to Usurp Established Limitations on Crimes

First, the DOJ argues that the expired statute of limitations on crimes does not mean that the Court should quash the Subpoena. [Doc. 10 at 16]. The DOJ contends

---

[16] The DOJ places great reliance on the "relevance" standard in *R. Enterprises, Inc.* The DOJ essentially suggests, in its briefing, that a subpoena cannot be quashed if the subpoena bears relevance to any possible criminal offense. *See* [Doc. 10 at 7]. But, *R. Enterprises, Inc.*, stated that relevance was not the only basis on which a subpoena could be quashed. *R. Enters. Inc.*, 498 U.S. at 301. The *R. Enterprises, Inc.* Court confined its assessment to relevance and did not purport to set forth considerations necessary to evaluate the broader question of "reasonableness." *Id.*; *see also id.* at 306 ("[T]he Court's opinion should not be read to suggest that the deferential relevance standard the Court has formulated will govern decision in every case, no matter how intrusive or burdensome the request.") (Stevens, J., concurring).

that "[a]ny subsequent criminal acts, or acts in furtherance of a criminal conspiracy, would restart the limitations period." [*Id*.]. In the DOJ's view, the possibility of criminal obstruction creates a timely offense. [Doc. 19 at 3]. However, as Fulton County pointed out at the hearing and in its subsequent briefing, *Grunewald v. United States*, 353 U.S. 391 (1957), forecloses this argument.

In *Grunewald*, three individuals were convicted of conspiracy to defraud the United States. *Id*. at 393. On certiorari, the Supreme Court considered multiple issues, including whether the statute of limitations for a conspiracy offense could be extended by evidence that the conspirators engaged in acts of concealment after the conspiracy's principal objective had already been accomplished. *Id*. at 400. The Supreme Court held that acts of concealment undertaken after the central objectives of the conspiracy had been achieved do not, by themselves, extend the duration of the conspiracy for statute-of-limitations purposes. *Id*.

Any alleged criminal conspiracy to interfere with the results of the 2020 Election was completed on December 14, 2020, when the Georgia Electors met to cast their vote, or at the latest on January 7, 2021, when the Congress certified the results. Based on *Grunewald*, the DOJ cannot rely on alleged acts of concealment that any purported conspirators hypothetically engaged in after the principal objective (the current President losing the 2020 Election) was achieved to indefinitely extend the statute of limitations.

20

The DOJ does not dispute that *Grunewald* is binding law and that it stands for the proposition that "mere overt acts of concealment" done "after the central criminal purposes of the conspiracy have been attained" do not extend the limitations period. [Doc. 19 at 1] (citing *Grunewald*, 353 U.S. at 402). Essentially, the DOJ attempts to contravene that opinion by arguing that "*Grunewald* is inapposite because it is procedurally distinguishable." [*Id*. at 1].[17] However, what the DOJ requests this Court to recognize is essentially a limitless extension of the statute of limitations, such that a court is powerless to quash a subpoena despite the existence of *Grunewald* if the DOJ theorizes possible evidence supporting obstruction.

As Fulton County states, under the DOJ's "position that the mere possibility of an obstruction charge cures any statute of limitations problem, this Court would be powerless to quash a subpoena in furtherance of a criminal investigation into any historical event," even if the event occurred many years or even many decades earlier. [Doc. 33 at 2] (internal punctuation omitted). Such a position is unreasonable. The DOJ cannot evade the statute of limitations based merely on a theory that someone, somewhere, somehow did something that was illegal.

---

[17] The DOJ states that, in *Grunewald*, the "contours of the conspiracy remained an open question even after trial and appeal to the United States Supreme Court." [*Id*. at 2] (citing *Grunewald*, 353 U.S. at 408). Therefore, the DOJ argues that the present case lacks evidence of a definite conspiracy, making it impossible for the Court to determine whether the principal objective has been achieved. This argument is unpersuasive, however, since the principal objective of election interference is logically interfering with and changing the election's results; any alternative objective is purely speculative and self-serving. Such speculation does not illustrate an increased need by the DOJ for the subpoenaed information.

The DOJ also argues that any statute of limitations defense is not for this Court to determine, but instead, is an affirmative defense that must be brought by a criminal defendant *after* prosecution has already begun. [Doc. 10 at 15–16] (quoting *Musacchio v. United States*, 577 U.S. 237, 248 (2016) ("[A] statute of limitations defense becomes part of a case only if the defendant puts the defense in issue.") (internal punctuation omitted).

While the Court acknowledges the DOJ may be correct in stating "when" a party may bring up a statute of limitations defense, the DOJ's argument is also unreasonable in this discussion. The fact that the statute of limitations is an affirmative defense does not establish that the DOJ has any greater need for information related to un-prosecutable crimes. It is inescapable that a defendant would bring up a statute of limitations bar. Indeed, it would be malpractice and constitute ineffective assistance of counsel for such party's attorney not to raise such defense.

The DOJ essentially asks the Court to turn a blind eye to the DOJ's investigation of nonspecific allegations and/or crimes which have no possibility of a conviction. In essence, the DOJ's argument is that it would be proper for a grand jury to investigate a time-barred crime, indict a defendant or defendants, and allow pretrial procedures to begin, when the conclusion is inevitable—the statute of limitations on the relevant crimes has run. Therefore, the DOJ asks the Court to use

its already scarce judicial resources on what would be a dead-end prosecution. The Court is not convinced that it must ignore the clear existence of a time bar against any hypothetical crimes.

### 2. The Government's Proffered Affidavit and Subsequent Briefing Does Not Support an Extension of the Statute of Limitations

Second, the DOJ attempts to use an affidavit and subsequent briefing given to the Court for *in camera* review to support its contention that it has a high need for the subpoenaed information that overrides Fulton County's burden in compliance. However, even after the Court reviewed the proffered affidavit and briefing, the Court is not convinced that the DOJ possesses a strong need for the subpoenaed information.  There is nothing in these materials that changes the Court's analysis or conclusions[18]

### 3. *Pitts* Does Not Support an Extension of the Statute of Limitations

Finally, the DOJ attempts to articulate a reason to extend the statute of limitations from the *Pitts* case. [Doc. 10 at 16]; *see Pitts*. Specifically, the DOJ

---

[18] The DOJ filed a Motion for *In Camera* Review [Doc. 32], which was granted by implication since the Court reviewed these materials. Fulton County filed a Response in Opposition [Doc. 34], requesting access to both the Affidavit and the DOJ's briefing. The Court does not grant Fulton County's request given the Court's conclusion that the information included in the DOJ's *in camera* materials is not compelling. If the Eleventh Circuit (on appeal) disagrees with the Court on this and remands this matter back to this Court, the Court likely would give Fulton County access to such documents for purposes of making a counterargument to that of the DOJ, subject to an appropriate protective order. Accordingly, the Fulton County's request for access [Doc. 34] is terminated as moot.

claims that "Judge Boulee determined that the Court could not 'ignore that a witness told [an FBI Special Agent] that some of the ballot images may have been modified as recently as January 11, 2024—which is well within the statutory period.'" [*Id*.].

However, Judge Boulee did not rely on these alleged wrongdoings to support his conclusion. Rather, Judge Boulee stated that the description of the events in *Pitts* was "troubling" and that the Government "failed to explain that this modification date could have been caused by personnel from the Secretary of State's Office simply renaming the file." *Pitts*, ECF No. 108 at 37. In ruling for the DOJ, Judge Boulee determined that it was not proven that the DOJ had "callously disregarded" the rights of Fulton County in seeking the search warrant for the election ballots. *Pitts, id*. at 53. Nothing within Judge Boulee's order convinces this Court that the DOJ has a high need for the election workers' personal, private information, which is something altogether different than the ballots in *Pitts*.

Additionally, even if the ballot images from the 2020 Election were altered in January 2024, the relevant statute would be 52 U.S.C. § 20701. That statute makes it a *misdemeanor* to modify records within twenty-two months of an election. 52 U.S.C. § 20701. Any modification of ballot images in January 2024 occurred long after the date that it became unlawful to alter such records. So, even with the allegation from January 2024, it is still unclear how the subpoenaed information regarding 2020 would help the DOJ's investigation.

24

Finally, and relatedly, it is not clear how poll workers from November 2020 would have anything to do with alleged alterations in January 2024. To the Court, it seems that if the ballots were altered in 2024, that would be a crime (if it were a crime) independent of anything that happened in 2020.[19] Therefore, *Pitts* certainly does not increase the DOJ's need for the subpoenaed information.

### B. The Subpoena Places an Undeniable High Burden on Fulton County

As compared to the DOJ's low need for the subpoenaed information, the burden of compliance for Fulton County is severe. As stated, Fulton County is the most populous county in the State of Georgia. Undoubtedly, Fulton County depends on thousands of workers, volunteers, and other staff to run its elections. The Subpoena requests disclosure of personal identifying information of thousands of employees and volunteers who participated in activities related to the 2020 Election. Such a large disclosure of information threatens to chill participation in future elections, which will surely impact Fulton County.[20]

This "chilling effect" is not hypothetical or unfounded. *See* [Doc. 17-12 at 2] (containing the declaration of Sarah Tindall Ghazal, a member of the Georgia State Election Board); [*Id.*] ("The risk of having nonpublic personal information,

---

[19] Further, it seems disingenuous to argue that the DOJ cannot possibly know if the ballots were altered in 2024 unless it fully investigates what happened in 2020.

[20] It is not lost on the Court that 2026 is an election year. Fulton County will need many workers and volunteers to effectively run the General Election come November.

including home addresses, mobile phone numbers, and email addresses disclosed to federal law enforcement, based on service as a volunteer or a simple poll worker, is highly likely to discourage many individuals from participating in elections as poll workers."); [*Id*. at 1] ("[E]lection workers have testified as to their deep concerns over their own and their staff's well-b[e]ing after being targeted by name in social media posts related to elections."); [*Id*. at 2] ("After news stories were published detailing the federal demand for personal information from 2020 poll workers, I received calls from individuals who had served in that capacity expressing deep concerns over their potential exposure for simply having served as a poll worker . . . . I had other conversations with election officials discussing concerns over the likelihood that the subpoena would make recruiting poll workers even more challenging at a time when counties were already having trouble filling positions.").[21] In fact, at no point has the DOJ disputed that the subpoenaed information would chill the participation of poll workers.

---

[21] The well-known reports of Ruby Freeman and her daughter, Shaye Moss, illustrate the real threat that identity disclosure and the potential of false allegations pose related to the 2020 Fulton County Election. Both women faced false allegations of "rigging" the 2020 Election. On May 31, 2022, Ms. Freeman gave an interview to the House Select Committee detailing the impact of the allegations against her. *See Transcribed Interview of Ruby Freeman Before the House Select Committee to Investigate the January 6th Attack on the United States Capitol* (May 31, 2022) (available at CTRL0000086315 - Transcribed Interview of Ruby Freeman, (May 31, 2022) - Content Details -). In that interview, Ms. Freeman recounted the harassment she underwent. *Id*. ("I am just one name, one reputation, one life devastated by disinformation, but there are so many more, and there will be even more if things don't change."). These events further support a chilling effect on Fulton County's election volunteers.

Is there a chance that questioning poll workers may yield *some* evidence? Maybe. But, the disclosure of the requested information would cause substantial harm to Fulton County's interest in enlisting poll workers and other election volunteers in the future, at least during the current Administration which seems so laser focused to cast the 2020 Election as illegitimate, even though it changes nothing practically.

Those who work to run elections (particularly those who volunteered their time during the COVID-19 pandemic) should be valued and are necessary for successful elections in Fulton County going forward. Allowing the DOJ to obtain by subpoena the Fulton County volunteers and workers' personal information, given its inability to prosecute anyone due to the time lapse, would be unreasonable and place a heavy burden on Fulton County that cannot be ignored.

## IV.    CONCLUSION

The subpoena power of the Grand Jury is broad, but it is not absolute. If it were, the Supreme Court could simply say so, which it has not. Given the low need for the subpoenaed information and the highly burdensome nature of the disclosure of the same, the Subpoena is unreasonable and must be quashed pursuant to Federal Rule of Criminal Procedure 17(a)(2).

Based on the foregoing, Fulton County's Motion to Quash Grandy Jury Subpoena [Doc. 1] is **GRANTED** and the United States of America's Cross-Motion

to Enforce Grand Jury Subpoena [Doc. 10] is **DENIED**. Accordingly, the Subpoena (Subpoena No. 2026R00350-01) [Doc. 1-1] is **QUASHED** and Fulton County is under no obligation to comply. Fulton County's request [Doc. 34] for access to the materials included in United States' Motion for *In Camera* Review [Doc. 32] is **TERMINATED AS MOOT**. The Clerk of Court is **DIRECTED TO TERMINATE** this case.

      **IT IS SO ORDERED** this 7th day of July, 2026.

WILLIAM M. RAY, II
UNITED STATES DISTRICT JUDGE

28